[No. 7012-6-I.　Division One.　June 2, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDREW MICHAEL KICHINKO, *Appellant*.

*James R. Short* and *Short & DeBay,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *H. Duane Evans, Deputy,* for respondent.

CALLOW, C.J.—Andrew Michael Kichinko appeals the judgment and sentence entered upon a jury conviction of attempted possession of stolen property in the first degree.

Officers of the Seattle Police Department began an investigation into Kichinko's activities on October 4, 1977,

based upon information that he was fencing stolen property. As a part of this investigation, an undercover officer sold 33 purportedly stolen items to Kichinko prior to April 18, 1978. Their approximate retail value was $1,109, and the officer received $376 from Kichinko in exchange for the purportedly stolen property.

On April 5, 1978, the officers had purchased a coin collection for $2,000. Thereafter, Kichinko was asked by the undercover officer whether he was interested in stolen coins. Kichinko indicated that he was. The officer was given permission to apply for an order authorizing the interception and recording of oral communication and a video recording. He applied for and received this order from a judge of the King County Superior Court on April 17, 1978. The officer arranged a purchase of the coins at Kichinko's place of business on April 19, 1978, after an April 18 meeting was canceled. Wired for sound and followed by a van containing recording and video tape equipment, the officer went to Kichinko's office. They held conversations in both the office and the officer's unmarked car. The coin collection was shown to and handled by Kichinko. After the conversation ended, Kichinko was arrested for attempted possession of stolen property in the first degree. The conversation was recorded and videotaped.

At the pretrial motion to suppress, the State and the defense agreed that the officer would be unable to testify from personal knowledge as to the exact nature of the conversation between himself and Kichinko. The recording and video tape were admitted into evidence over Kichinko's objection, and the State and the defendant agreed that without the recording prosecution was not possible. The material portions of the application and the order authorizing the interception and recording of the conversation are attached as an appendix hereto.

The following issues are presented: (1) What criteria must be satisfied before a judge may lawfully issue an order authorizing the police to record and videotape a conversation between a suspect and an undercover officer? (2) Was

there probable cause to believe a crime had been or was about to be committed by the suspect?

We turn to the first inquiry concerning the criteria which must be satisfied before a judge may issue an order authorizing the recording and videotaping of a conversation between a suspect and an undercover officer.

Kichinko contends the order cannot lawfully issue without a showing that normal investigative procedures had failed, or were unlikely to succeed or were too dangerous, citing RCW 9.73 and *United States v. Kalustian,* 529 F.2d 585 (9th Cir. 1975). He contends that the statutes authorizing electronic eavesdropping must be strictly construed, that their plain language imposes this requirement, and that such language cannot be modified by construction, citing *United States v. Giordano,* 416 U.S. 505, 40 L. Ed. 2d 341, 94 S. Ct. 1820 (1974); *Purse Seine Vessel Owners Ass'n v. Moos,* 88 Wn.2d 799, 567 P.2d 205 (1977).

The State argues that the act does not require the judge to conclude that other procedures had failed, would fail or were too dangerous before police may be allowed to record conversations. RCW 9.73.090(2); RCW 9.73.130(3)(f). The State argues, alternatively, that if this so-called "necessity" requirement is subject to judicial review, it should be read to require only a showing of "reasonable necessity" to render it consistent with the purpose of the act and to make it effective. *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972).

Prior to 1977, RCW 9.73.030 made it unlawful for a political subdivision of the state to record a private communication between two or more individuals without first obtaining the consent of all participants. Former RCW 9.73.030; Laws of 1967, 1st Ex. Sess., ch. 93, § 1. A violation of this statute rendered the recording inadmissible in a criminal case except when the crime jeopardized national security. RCW 9.73.050.[1] Although the law allowed and continues to allow court ordered recordings pursuant to

---

[1]The applicable sections of RCW 9.73.030, .040, and .050 read:

RCW 9.73.040, such recordings are not admissible in a criminal case unless the crime jeopardizes national security. RCW 9.73.050. We read these sections of the statute as pertaining specifically to matters involving danger to human life, arson, riot or national security. We interpret the requirement of RCW 9.73.040(1)(c), requiring the application to set forth a statement that there are "no other

"9.73.030 Intercepting or recording private communication — Consent required — Exceptions. (1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

"(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication.

"(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

"9.73.040 Intercepting, recording, or divulging private communication—Court order permitting interception—Grounds for issuance—Duration—Renewal. (1) An ex parte order for the interception of any communication or conversation listed in RCW 9.73.030 may be issued by any superior court judge in the state upon verified application of either the state attorney general or any county prosecuting attorney setting forth fully facts and circumstances upon which the application is based and stating that:

"(a) There are reasonable grounds to believe that national security is endangered, that a human life is in danger, that arson is about to be committed, or that a riot is about to be committed, and

"(b) There are reasonable grounds to believe that evidence will be obtained essential to the protection of national security, the preservation of human life, or the prevention of arson or a riot, and

"(c) There are no other means readily available for obtaining such information.

"9.73.050 Intercepting, recording, or divulging private communication—Admissibility in evidence. Any information obtained in violation of RCW 9.73.030 or pursuant to any order issued under the provisions of RCW 9.73.040 shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except with the permission of the person whose rights have been violated in an action brought for damages under the provisions of RCW 9.73.030 through 9.73.080, or in a criminal action in which the defendant is charged with a crime, the commission of which would jeopardize national security."

means readily available for obtaining such information," as applying only to those felonies mentioned in that section of the statute and not to felonies not specified therein.

In 1977, the legislature added a new exception to RCW 9.73.090 which allowed broader evidentiary use of recordings obtained pursuant to court authorization. Laws of 1977, 1st Ex. Sess., ch. 363, § 3.[2] The legislature also added RCW 9.73.130 which listed the required contents of each application for such authorization.[3]

---

[2]The relevant sections of RCW 9.73.090 read as follows:

"(2) It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation where the officer is a party to the communication or conversation or one of the parties to the communication or conversation has given prior consent to the interception, recording, or disclosure: *Provided,* That prior to the interception, transmission, or recording the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a nonconsenting party for a reasonable and specified period of time, if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony: . . .

"Any recording or interception of a communication or conversation incident to a lawfully recorded or intercepted communication or conversation pursuant to this subsection shall be lawful and may be divulged.

". . .

"(3) Communications or conversations authorized to be intercepted, recorded, or disclosed by this section shall not be inadmissible under RCW 9.73.050."

[3]RCW 9.73.130 states:

"9.73.130 Recording private communications—Authorization—Application for, contents. Each application for an authorization to record communications or conversations pursuant to RCW 9.73.090 as now or hereafter amended shall be made in writing upon oath or affirmation and shall state:

"(1) The authority of the applicant to make such application;

"(2) The identity and qualifications of the investigative or law enforcement officers or agency for whom the authority to record a communication or conversation is sought and the identity of whoever authorized the application;

"(3) A particular statement of the facts relied upon by the applicant to justify his belief that an authorization should be issued, including:

"(a) The identity of the particular person, if known, committing the offense and whose communications or conversations are to be recorded;

"(b) The details as to the particular offense that has been, is being, or is about to be committed;

"(c) The particular type of communication or conversation to be recorded and a showing that there is probable cause to believe such communication will be

The State argues that RCW 9.73.130(3)(f) is designed to insure recordings will not be unsupervised or routinely employed. The State contends this purpose is satisfied by making the officer and the court publicly accountable for their compliance with the statute. No provision of the statute requires the judge to find "necessity" before issuing an order, and therefore the State argues that RCW 9.73-.130(3)(f) was not intended to affect the admissibility of recordings.

It is the purpose of RCW 9.73 to protect the public from public dissemination, even in a trial, of recorded information obtained by illegal procedures. *State v. Wanrow*, 88 Wn.2d 221, 233, 559 P.2d 548 (1977), *aff'd*, 91 Wn.2d 301, 588 P.2d 1320 (1978). The addition of RCW 9.73.130 and the amendment of RCW 9.73.090 provided a new procedure for the legal recording of information. Failure to comply with the procedures would render an order based upon a faulty application unlawful, and an illegally

communicated on the wire communication facility involved or at the particular place where the oral communication is to be recorded;

"(d) The character and location of the particular wire communication facilities involved or the particular place where the oral communication is to be recorded;

"(e) A statement of the period of time for which the recording is required to be maintained, if the character of the investigation is such that the authorization for recording should not automatically terminate when the described type of communication or conversation has been first obtained, a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

"(f) A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ;

"(4) Where the application is for the renewal or extension of an authorization, a particular statement of facts showing the results thus far obtained from the recording, or a reasonable explanation of the failure to obtain such results;

"(5) A complete statement of the facts concerning all previous applications, known to the individual authorizing and to the individual making the application, made to any court for authorization to record a wire or oral communication involving any of the same facilities or places specified in the application or involving any person whose communication is to be intercepted, and the action taken by the court on each application; and

"(6) Such additional testimony or documentary evidence in support of the application as the judge may require."

obtained recording would be excluded from evidence. *State v. Mayes,* 20 Wn. App. 184, 579 P.2d 999 (1978); RCW 9.73.030; RCW 9.73.050; RCW 9.73.090.

■ We turn to the question of whether the application for the order satisfied RCW 9.73.130(3)(f). An original act and all amendments should be read as one law passed at the same time, taking into account the sequence of all statutes relating to the same subject matter. The meaning of the language should be determined from the purpose of the legislation and by reading it in the light of all related provisions. *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972). Where ambiguous, it should be given a reading consistent with that purpose and it should be read to make the legislation effective. *Miller v. Paul Revere Life Ins. Co.,* 81 Wn.2d 302, 501 P.2d 1063 (1972); *State v. Coffey,* 77 Wn.2d 630, 465 P.2d 665 (1970).

■ RCW 9.73.130(3)(f) does not define "other normal investigative procedures." Both parties assume that this term requires the court to find that the *recording* of conversations is a necessary investigative procedure. The statute does not insist that there first be a showing of a "necessity" of a recording to acquire or preserve evidence to gain authorization to do so. The only advantage to the recording then would be the availability of exact words spoken rather than having to rely upon an informant's or officer's memory. It would be impossible to gain authorization because it could not be shown that without a recording the undercover operation failed, would fail or would be too dangerous. The recording procedure could never be used.

We read the application for authorization to intercept and record the communications as setting forth a particular statement of facts showing that other normal investigative procedures with respect to the offense reasonably appeared to be unlikely to succeed. RCW 9.73.130(3)(f). The application explains that successful prosecution of the crime of attempted possession of stolen property requires proof of knowledge that the property to be received has been stolen, as reflected by the defendant's statements. *See* RCW

9A.56.140. The application further points out that unless it can be shown exactly what was said, the evidence that could otherwise be garnered would be inexact, conflicting and confusing. Though we might paint a more detailed and eloquent picture of the necessity of a recording for a successful investigation, the statements set forth adequately comply with the requirements of the statute. We hold the application sufficient and the order authorizing the recording and videotaping of the conversation between the detectives and the defendant valid.

The second issue raised is whether there was probable cause to believe a crime had been or was about to be committed by the suspect. Kichinko contends the application, dated April 17, 1978, does not establish probable cause because it reveals no overt act in furtherance of his alleged willingness to buy stolen coins, nor state when he, the defendant, engaged in an incriminating conversation with the detective.

The application reveals a history of purchases by Kichinko of property described to him as stolen. It also shows Kichinko's definite interest in the allegedly stolen coins and his desire to see them first. It reveals a meeting planned for April 18, 1978, to show him the coins and complete their purchase. The application established probable cause that the felony of attempted possession of stolen property was about to be committed. *See State v. Patterson*, 83 Wn.2d 49, 515 P.2d 496 (1973).

The judgment is affirmed.

JAMES and WILLIAMS, JJ., concur.

## APPENDIX

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

APPLICATION OF DET. _____

IN THE MATTER OF
AUTHORIZATION TO
INTERCEPT AND RECORD
COMMUNICATIONS OR
CONVERSATIONS PUR–
SUANT TO RCW 9.73.090

No. 12050 PCR

APPLICATION

STATE OF WASHINGTON

COUNTY OF KING

I, Detective _____, being first duly sworn on oath, deposes and says:

(1) That I am a commissioned law enforcement officer of the Seattle Police Department Fencing Unit; that said unit possesses the following qualifications to intercept and record communications or conversations: Seattle Police Department owns various items of electronic audio and video equipment designed for these purposes; that myself and members of this unit are trained in their use and have, in fact, operated them recently under field conditions; that I have been authorized by Captain _____ to make this application; that I make this application by authority of RCW 9.73.090(2).

(2) That there is probable cause to believe that ANDREW MICHAEL KICHINKO is engaged in and is about to commit the crime of attempted possessing stolen property in the first degree (RCW 9A.28.020 and 9A.56.150) a felony, and that intercept and recording of the communications or conversation of ANDREW (Andy) KICHINKO, Det. _____ and other persons present, identity unknown, who may be parties to the transaction should be authorized for the following reasons:

a) That based on extensive intelligence information dating back to 1967 indicating that KICHINKO is an active fence, the Anti–Fencing Unit of the Seattle Police Department commenced an official investigation of his activities in October, 1977; that on 10–11–77 another member of this unit, Det. _____, in an undercover role, met with another individual known to him as "the Greek" at a downtown cocktail lounge. This person indicated that he "knew a guy who would buy" the purported stolen merchandise that _____ had for sale. _____ drove this person to 2244 – 6th Avenue South and "the Greek" took approximately $100.00 worth of tools into the

office marked "Andy Kichinko, Freight Broker" and sold them; that on 2-28-78 myself and SPD Agent #28 went to the same location and met with an individual identified by prior police photographs as ANDY KICHINKO. We had with us approximately $90.00 worth of property consisting of a smoke alarm, a power drill, a portable radio, and a fire extinguisher, all new, in original boxes, and with price tags. We indicated that we had stolen all of these items and would sell them for one-third of their listed price. He purchased these four items for $32.00. In response to our representations of access to other items, he ordered five rechargeable type, cordless soldering irons handled by Sears. I told him we would try to steal them and get back to him. On 3-3-78, #28 and myself delivered four soldering irons to KICHINKO telling him they were stolen. Since that time I have met with KICHINKO on four different occasions, without Agent #28. On each of these occasions, sales of purportedly stolen merchandise were made to KICHINKO. I was surveilled and photographs were taken of these transactions. These meetings all took place at his office, 2244 – 6th Avenue South. The dates of the meetings were: 3-6-78, 3-16-78, 3-31-78 and 4-12-78. During the course of each of these meetings the fact that the items he was purchasing were stolen was discussed. He also alluded to past dealings of his in stolen property and stated that the "stolen property" business was "very slow". He also made additional orders for more soldering irons, welders, telescopic sights for rifles, hunting ammunition and miscellaneous tools. On the last four occasions thirty-one (31) items of property were sold with a retail value of $940.00. I received $311.00 for these items.

b) Pursuant to an investigative plan, I have told KICHINKO that I am coming into possession of a stolen coin collection valued at approximately $2,000.00 and that it will be "extremely hot", i.e. recently stolen. I also told him that I would only be asking $500.00 to $600.00 for it. He stated that he would definitely be interested, that the money would be no problem, but that he wanted to see the coins first. Arrangements were made by him to have me bring the coins to him on Tuesday, 4-18-78. He asked me to call him Monday, 4-17-78, in the afternoon to confirm that I have the coins and to remind him to have the cash on hand. This transaction would constitute a felonious property crime. I, Det. _____, will be a party to this intended conversation and hereby give my prior consent to the interception and recording of same. (Attached affadavit ..... etc.)

c) The interception and recording of this conversation is to be made in or around KICHINKO's office located at 2244 – 6th Avenue South, Seattle.

d) Maximum seven (7) day time limit should be authorized due to the fact that normal business activities may preclude parties to the

conversation being able to get together at a predetermined, specific time.

e) Successful prosecution of this type of case requires proof of knowledge contained in a verbal exchange. Possession of this verbal exchange in the form of a recording resolves any issues as to *exactly* what was said, by whom, and in evidentiary value is worth dozens of witnesses testifying from their inexact memories.

(3) I know of no previous applications involving the same facility or place specified herein, or involving any person(s) named herein whose communications or conversation is to be intercepted and recorded.

(4) No application for renewal or extension at this time.

(5) That in view of the foregoing, I believe communications or conversations concerning the crime of attempt possession of stolen property in the first degree (a felony) will occur on or about April 18, 1978 to April 24, 1978 involving ANDREW M. KICHINKO and Detective _____ (myself) in an undercover role; that those communications or conversations will be evidence of this crime; and that intercept and recording of those communications or conversations by any device or instrument should be authorized, commencing April 17, 1978 and to be completed not later than April 24, 1978 (7 days maximum).

[Signed by Detective _____]

SUBSCRIBED and SWORN to before me
this 17 day of April, 1978.
[Signed] _____
JUDGE
Superior Court

Application Approved:
[Signed] _____
Deputy Prosecuting Attorney

STATE OF WASHINGTON ⎫
⎬ ss.
COUNTY OF KING ⎭

[Name of detective], being duly sworn, hereby declares:

That I am 34 years of age and have been advised or have knowledge of a criminal investigation presently being conducted by Seattle Police Fencing Unit; that I intend to cooperate and assist in said investigation;

In that connection, I have consented to an electronic device being used to intercept and record conversations had in my presence; that I understand said device is capable of intercepting all conversations that may be held in my presence or view, and that these conversations will be recorded; I expressly consent to such interception and recording, and

further consent to the divulgence of any and all conversations intercepted and recorded as a result of said investigation.

The consent acknowledged herein shall be effective from this date forward until completion of said investigation, or until expressly revoked by me in writing. In that event, such written revocation shall not invalidate my consent as to any intercepts or recordings previously made hereunder.

[Signed] _____

Sworn to and Subscribed before me
this 13th day of April, 1978.
[Signed by notary public]_____
Notary Public in and for the state of
Washington, residing at Bothell.

In the Superior Court of the State of Washington
For King County

| | |
|---|---|
| In the Matter of Authorization To Intercept and Record Communications or Conversations Pursuant to RCW 9.73.090 | No. 12050 PCR<br><br>Order Authorizing Intercept and Recording |

To: Detective _____ and members of the Seattle Police Department Fencing Unit

Whereas, sworn application having been made before me by Detective _____, a commissioned law enforcement officer of Seattle Police Department Fencing Unit, and full consideration having been given to the matters set forth therein, the court hereby Finds:

(a) There is probable cause for belief that Andrew M. Kichinko has committed and is about to commit the crimes of attempted possession of stolen property in the first degree, a felony.

(b) There is probable cause for belief that communications or conversations relating to said offense(s) will take place and will be obtained as evidence through interception and recording as hereafter set forth;

(c) Detective _____, one party to the expected communication or conversation, has given consent to intercept and recording of same;

(d) Normal investigative techniques reasonably appear to be unlikely to obtain convincing, accurate evidence of the crime(s);

Now, therefore, It Is Hereby Ordered That:

Detective _____ and members of the Seattle Police Department Fencing Unit, together with necessary technical assistance are authorized to intercept and record by any device or instrument the communications or conversations of Andrew M. Kichinko and Detective

_____ concerning commission of the offense of attempted possession of stolen property in the first degree occurring at or upon the following place: 2244 – 6th Avenue South.

IT IS FURTHER ORDERED that this authorization is effective April 17, 1978 and shall terminate upon (intercept and recording of the communications and conversations described above), or in any event upon the passage of seven (7) days from the effective date.

DONE this 17 day of April, 1978.

[Signed] _____
JUDGE

Reconsideration denied June 23, 1980.

Review denied by Supreme Court September 19, 1980.