[No. 9025–6–III.   Division Three.   May 16, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES HUSTON KNIGHT, *Appellant.*

*Terence Ryan,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Gervais McAuliffe, Deputy,* for respondent.

THOMPSON, C.J.—Charles Huston Knight appeals his convictions for attempted first degree trafficking in stolen property, RCW 9A.28.020(1); RCW 9A.82.050(2), and two counts of delivery of a controlled substance, RCW 69.50-.401(a). We affirm the drug convictions, but reverse the attempted trafficking conviction.

On June 2, 1987, an informant met with officers of the Spokane Police Department. The officers arranged to have the informant introduce an undercover officer to Mr. Knight, and planned a "sting" operation in which they would trade stereo equipment for cocaine.

The officers applied for and received judicial authorization to record the anticipated transactions by attaching a "body wire" to the undercover officer. The officers purchased various stereo equipment and video equipment to use in trade during these transactions.

In the company of the informant, the undercover officer engaged in two deals at Mr. Knight's home, one on June 5 and another on June 9, 1987. The undercover officer received cocaine in both transactions on both occasions. While the dealings were taking place, an officer made a videotape from an unmarked vehicle parked near the site, while simultaneously recording the audio communications transmitted by the "body wire". The recorded transactions were replayed in the jury's presence.

After the second transaction, officers obtained search warrants for the homes of Mr. Knight and a friend. In searching Mr. Knight's home, officers discovered property traded to him in the "sting" operation, as well as a large quantity of other electronic equipment, cameras, guns, currency and jewelry. A large amount of this property, seized by the officers, was admitted into evidence at trial.

The defense presented evidence that Mr. Knight was a disc jockey who used and kept a large amount of stereo and video equipment in his home. Various witnesses identified some items seized by police as having been purchased by or given or loaned to Mr. Knight. Two witnesses testified they heard the informant, in May 1987, offer to sell Mr. Knight a stereo, but Mr. Knight refused.

On his conviction, Mr. Knight was sentenced to 30 months in prison.

The first issue is whether Mr. Knight was entitled to compel the testimony of the confidential informant. He argues, on the authority of *State v. Thetford,* 109 Wn.2d 392, 745 P.2d 496 (1987), that the confidential informant's involvement with police was so great that he was a de facto police officer, and that his identity should be disclosed. Mr. Knight also apparently argues the court should have conducted an in camera hearing to determine the relevance of

the informant's potential testimony, and he was entitled to compel the informant's testimony in his defense. As the trial judge observed, however, the identity of the informant was not a secret in this case.

The real question is whether Mr. Knight was entitled to compel the informant's testimony[1] under U.S. Const. amend. 6. *See Washington v. Texas,* 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967). The right to compulsory process is limited to witnesses whose testimony is relevant and material to the defense. *Washington,* 388 U.S. at 23; *State v. Smith,* 101 Wn.2d 36, 41, 677 P.2d 100 (1984). The defendant bears the burden of showing materiality. *Smith,* at 41. Mr. Knight contends the informant's testimony was relevant to the issue of entrapment. Mr. Knight did not testify at the suppression hearing, but defense counsel argued the evidence established essentially four facts that he claims are relevant to the entrapment defense: (1) the informant had approached Mr. Knight previously about purchasing stereo equipment; (2) the informant had a prior relationship with the police; (3) the informant was present at both transactions; and (4) another man who was present at the transactions refused to testify, making the informant's testimony necessary to corroborate Mr. Knight's defense.

To establish entrapment, the defendant is required to prove: (1) that he was induced into committing the crime by law enforcement agents; and (2) that he otherwise would not have committed the crime. *Smith,* at 43; *see* RCW 9A.16.070. The evidence to which Mr. Knight refers fails to demonstrate either element. As in *Smith,* Mr. Knight's allegations were insufficient as a matter of law to establish the entrapment defense. The testimony of the witness thus was not material, and the court committed no error in refusing to conduct an in camera hearing. *Smith,* at 44–45;

---

[1]The defense apparently was unable to locate the informant. Several police officers testified he had moved to the coast, but they did not know where.

*see State v. Enriquez,* 45 Wn. App. 580, 584, 725 P.2d 1384 (1986), *review denied,* 107 Wn.2d 1020 (1987).

Mr. Knight next argues the recording of his conversations with the undercover officer violated the provisions of RCW 9.73. RCW 9.73.030(1) provides that, except in identified circumstances, it is unlawful to intercept or record any:

> (a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;
>
> (b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

An exception is the 1–party consent statute. *State v. O'Neill,* 103 Wn.2d 853, 863, 700 P.2d 711 (1985). RCW 9.73.090(2) provides in pertinent part:

> It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation where the officer is a party to the communication or conversation or one of the parties to the communication or conversation has given prior consent to the interception, recording, or disclosure: *Provided,* That prior to the interception, transmission, or recording the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a nonconsenting party for a reasonable and specified period of time, if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony: . . .
>
> Any recording or interception of a communication or conversation incident to a lawfully recorded or intercepted communication or conversation pursuant to this subsection shall be lawful and may be divulged.

An application for authorization to record communications pursuant to the 1–party consent statute must meet specific standards.[2] In challenging the officers' compliance with these provisions, Mr. Knight raises the following contentions:

A. The application failed to state the qualifications of the undercover officer who actually wore the "body wire".

---

[2]RCW 9.73.130 requires that the application state:

"(1) The authority of the applicant to make such application;

"(2) The identity and qualifications of the investigative or law enforcement officers or agency for whom the authority to record a communication or conversation is sought and the identity of whoever authorized the application;

"(3) A particular statement of the facts relied upon by the applicant to justify his belief that an authorization should be issued, including:

"(a) The identity of the particular person, if known, committing the offense and whose communications or conversations are to be recorded;

"(b) The details as to the particular offense that has been, is being, or is about to be committed;

"(c) The particular type of communication or conversation to be recorded and a showing that there is probable cause to believe such communication will be communicated on the wire communication facility involved or at the particular place where the oral communication is to be recorded;

"(d) The character and location of the particular wire communication facilities involved or the particular place where the oral communication is to be recorded;

"(e) A statement of the period of time for which the recording is required to be maintained, if the character of the investigation is such that the authorization for recording should not automatically terminate when the described type of communication or conversation has been first obtained, a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

"(f) A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ;

"(4) Where the application is for the renewal or extension of an authorization, a particular statement of facts showing the results thus far obtained from the recording, or a reasonable explanation of the failure to obtain such results;

"(5) A complete statement of the facts concerning all previous applications, known to the individual authorizing and to the individual making the application, made to any court for authorization to record a wire or oral communication involving any of the same facilities or places specified in the application or involving any person whose communication is to be intercepted, and the action taken by the court on each application; and

"(6) Such additional testimony or documentary evidence in support of the application as the judge may require."

However, the undercover officer's involvement here was minimal. He attached the device to his body and turned it on. Officer Sheldon Reeve, whose qualifications are detailed in the application, clearly was responsible for the interception and recording. This contention fails.

B. The application failed to identify the locations of some of the anticipated transactions, and the order failed to name any location for the recordings.

The application specifically identified two locations, one of which was the address where the recorded communications actually occurred. The statute does not require the authorization order to identify a location. This contention fails.

C. The order authorizing the recording was effective for 7 days, as is permitted under RCW 9.73.090(4), but the application gave no basis for believing this period was appropriate, as required by RCW 9.73.130(3)(e).

However, the investigation envisioned three transactions, which necessarily would extend over a period of time. In these circumstances, the statutory maximum surveillance period was appropriate. *See O'Neill,* at 873. There was no error.

D. The application failed to state, as required by RCW 9.73.130(3)(f), that other investigative procedures had been tried and failed, or appeared unlikely to succeed, or were too dangerous. The trial court, relying on *State v. Kichinko,* 26 Wn. App. 304, 613 P.2d 792, *review denied,* 94 Wn.2d 1011 (1980), held no such statement was required. However, the *Kichinko* decision, at pages 308–09, merely held that the more rigorous statement of necessity pursuant to RCW 9.73.040(1)(c) is required only in those limited circumstances where electronic surveillance is allowed without either party's consent, pursuant to RCW 9.73.040 (national security or human life endangered, imminent arson or riot). In fact, *Kichinko,* at 311, applied the requirement of RCW 9.73.130(3)(f), holding it does not require a showing of absolute necessity. The application in *Kichinko* satisfied the less rigorous requirement of RCW 9.73.130(3)(f) by

pointing out that successful prosecution of the crime of attempted possession of stolen property requires proof of knowledge the property was stolen, and that proof of exact content of conversations is important. *Kichinko,* at 311–12. Similarly, in *State v. Platz,* 33 Wn. App. 345, 350, 655 P.2d 710 (1982), *review denied,* 99 Wn.2d 1012 (1983), the application indicated other investigative procedures had been used, and explained the need for an exact recording of the communication.

Here, the application indicates a cocaine purchase was attempted using a police agent several days earlier, but the statement does not directly demonstrate the need for a recording. Federal courts interpreting a similar provision in the federal wiretap statute[3] have held that police officials need not exhaust all alternatives, but must seriously consider other techniques, and the authorizing court must be informed of the reasons the alternatives have been or likely will be inadequate. *United States v. Lambert,* 771 F.2d 83, 91 (6th Cir.), *cert. denied,* 474 U.S. 1034, 88 L. Ed. 2d 577, 106 S. Ct. 598 (1985). The issuing judge has "considerable discretion" to determine whether the statutory safeguards have been satisfied, *Platz,* at 350 (quoting *United States v. Martin,* 599 F.2d 880, 886–87 (9th Cir.), *cert. denied,* 441 U.S. 962, 60 L. Ed. 2d 1067, 99 S. Ct. 2408 (1979)); *see State v. Irwin,* 43 Wn. App. 553, 556–57, 718 P.2d 826, *review denied,* 106 Wn.2d 1009 (1986). The reviewing court's role is not to review the application's sufficiency de novo, but "to decide if the facts set forth in the application were minimally adequate to support the determination that

---

[3] 18 U.S.C.A. § 2518 (1982 & Supp. 1989) provides in relevant part:

"(1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

". . .

"(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;"

was made". *United States v. Scibelli,* 549 F.2d 222, 226 (1st Cir.), *cert. denied,* 431 U.S. 960, 53 L. Ed. 2d 278, 97 S. Ct. 2687 (1977).

In making this determination, the issuing judge may take note of the crime alleged and the nature of the investigation. For example, in *United States v. Vento,* 533 F.2d 838, 850 (3d Cir. 1976), the court recognized the inherent danger in placing an undercover agent in the midst of a criminal enterprise. *See United States v. Hyde,* 574 F.2d 856, 868 (5th Cir. 1978) ("The Government has never been required to subject its agents and informants to undue personal danger in order to satisfy the requirements of 18 U.S.C. § 2518(3)(c)."). And in *United States v. Santarpio,* 560 F.2d 448, 452 (1st Cir.), *cert. denied,* 434 U.S. 984, 54 L. Ed. 2d 478, 98 S. Ct. 609 (1977), the court observed the issuing judge was entitled to take into account proof difficulties inherent in the crime alleged (gambling operation "essentially a telephone crime").

In this case, the need for the electronic surveillance was apparent. The undercover officer's safety required that other officers listen and be prepared to move in if necessary. Also, successful prosecution of the crime of trafficking in stolen property requires proof that the defendant knew the property was stolen. RCW 9A.82.050(2). The need for an exact recording of Mr. Knight's conversations with the undercover officer was obvious. In these situations, a more definite and precise statement of these considerations is preferable, but we hold the judge did not abuse his discretion in granting authorization. The recordings did not violate RCW 9.73, and the trial court was correct in refusing to suppress them.

Mr. Knight raises three other issues related to the recording. They are:

A. RCW 9.73.090(2) permits officers to "intercept, record, or disclose" communications, but the officers *transmitted* Mr. Knight's conversations with the undercover officer before recording them. The proviso to RCW 9.73.090(2)

expressly envisions "transmission" of communications. This contention fails.

B. There is an inconsistency in the language of the application and the order. The former stated there was probable cause to believe Mr. Knight "is engaged in" the crimes, but the latter found there was probable cause to believe Mr. Knight "is about to commit" the crimes. The appropriate question is not whether the application correctly declared the presence of probable cause (which is not required by RCW 9.73.130), but whether the issuing judge or magistrate correctly found probable cause based on facts supplied in the application. Whatever the reason for the inconsistency, it is insignificant. This contention fails.

C. Probable cause was lacking, because the application contained facts from an informant whose credibility was insufficiently verified, and because there was no indication Mr. Knight had agreed to purchase *stolen* property. Thus, he argues, there was no probable cause to believe he was about to commit the crime of trafficking in stolen property. However, RCW 9.73.090(2) requires only that the issuing judge or magistrate find probable cause to believe the suspect has committed, is committing or is about to commit *a felony*. Here, the application stated police officers heard the informant make a deal over the telephone to trade stereo equipment for two "eight balls" of cocaine. Dealing in cocaine is delivery of a controlled substance, a felony. RCW 69.50.401(a); RCW 9A.04.040(2). The question, then, is whether the application establishes probable cause to believe Mr. Knight was the person to whom the informant was speaking, the only fact not personally witnessed by the affiant officer.

When an informant's tip forms the basis for establishing probable cause, the officers must establish both the basis of the information and the credibility of the informant. *State v. Jackson,* 102 Wn.2d 432, 433, 688 P.2d 136 (1984). The basis of information prong is satisfied because

the informant purportedly was passing on firsthand information. *Jackson,* at 437. The credibility prong may be satisfied by establishing a reliable "track record" of providing information. *State v. Wolken,* 103 Wn.2d 823, 827, 700 P.2d 319 (1985). Here, the application stated the informant had provided information leading to the discovery of trace evidence of narcotics in a Spokane residence, and had been used by the police in Everett several years earlier. An Everett police detective said he had used the informant in the past and would not hesitate to use him again. This information satisfies the credibility requirement. *See State v. Fisher,* 96 Wn.2d 962, 965–66, 639 P.2d 743, *cert. denied,* 457 U.S. 1137, 73 L. Ed. 2d 1355, 102 S. Ct. 2967 (1982). Probable cause was established.

Next, Mr. Knight contends the court erred in permitting an officer to testify the informant and his family were threatened shortly after Mr. Knight's arrest. On cross examination of Detective Jack Neumiller, counsel for Mr. Knight asked if the informant was paid $600 on June 11, 1987, to move out of Spokane. Detective Neumiller answered in the affirmative. Later, the prosecutor elicited from Detective Reeve testimony that the informant received telephone threats against himself and his family shortly after Mr. Knight was arrested, and as a result the police department gave him the money to move out of town. Mr. Knight contends this evidence was highly prejudicial, and should have been excluded under ER 403.

As the State points out, defense counsel objected at trial that the evidence was hearsay. As a general rule, an appellate court will not reverse on a basis not argued at trial. *State v. Ferguson,* 100 Wn.2d 131, 138, 667 P.2d 68 (1983); 5 K. Tegland, Wash. Prac., *Evidence* § 10, at 37 (3d ed. 1989); RAP 2.5(a).

Even if we were to apply ER 403, however, we note that the trial court has "wide discretion in balancing the probative value of evidence against its potential prejudicial impact". *State v. Coe,* 101 Wn.2d 772, 782, 684 P.2d 668

(1984). Counsel for Mr. Knight "opened the door" by questioning Detective Neumiller about police involvement in the informant's move from Spokane. This necessitated or at least warranted allowing the State to clarify what occurred. *See generally* 5 K. Tegland § 11, at 41–50. The prejudicial effects of the testimony were minimized by the witness' avoidance of an allegation that Mr. Knight himself made the threats. Detective Reeve referred to the callers as "unnamed" and "unidentified", and admitted on cross examination he did not know who made the threats. The trial judge did not abuse his discretion by allowing this testimony.

The next issue is whether the court erred in permitting an officer to testify that drug dealers customarily have currency in large denominations on their persons or in their homes. Mr. Knight contends the evidence is prejudicial stereotyping that suggests all persons who have large amounts of cash are drug dealers. Again, this is a matter within the trial court's discretion. *State v. Coe, supra.* The evidence was not prejudicial, as it did not imply all people with large amounts of cash are drug dealers. Rather it was an assertion that drug dealers tend to have large amounts of cash. The testimony helped to explain the presence of $2,001 in cash in a bathrobe in Mr. Knight's home. The trial judge did not abuse his discretion in allowing it.

Finally, Mr. Knight contends the court erred in failing to instruct the jury on the crimes of first and second degree possession of stolen property. A defendant is entitled to have the jury instructed on a lesser included offense if (1) each of the elements of the lesser offense is a necessary element of the offense charged; and (2) the evidence in the case supports an inference the lesser crime was committed. *State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978); *see* RCW 10.61.003–.006.

The parties appear to agree that under these facts possession is a lesser included offense. The State argues,

however, that there was no factual basis for the possession instructions. It points out the trial court required it to amend its information to charge *attempted* trafficking, because the property traded to Mr. Knight was in fact not stolen. *See State v. Davidson,* 20 Wn. App. 893, 584 P.2d 401 (1978) ("attempt" is possible even if completed act is factually impossible), *review denied,* 91 Wn.2d 1011 (1979). In amending the information, the State retained the original document's reference to various other property that had not been a part of the police undercover operation, specifically a Technics turntable, a Sharp VCR, a Minolta camera and lens, and a Speaker Tab stereo speaker. At trial, owners identified several items seized at Mr. Knight's home as having been stolen, including a Technics turntable, a Sharp VCR, and a Minolta camera and lens. The record contains evidence that supports the inference Mr. Knight possessed stolen property.

> Regardless of the plausibility of this circumstance, the defendant had an absolute right to have the jury consider the lesser included offense on which there is evidence to support an inference it was committed. *State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981); *State v. Dowell,* 26 Wn. App. 629, 613 P.2d 197, *review denied,* 94 Wn.2d 1018 (1980).

*State v. Parker,* 102 Wn.2d 161, 166, 683 P.2d 189 (1984). The court erred in failing to instruct the jury on possession of stolen property. The attempted trafficking conviction thus must be reversed. However, this will not affect the convictions for delivery of a controlled substance. The error is harmless as to those convictions. *State v. Southerland,* 109 Wn.2d 389, 391, 745 P.2d 33 (1987).

Our resolution of this issue makes it unnecessary to address other issues raised by Mr. Knight. We affirm the convictions for delivery of a controlled substance, and reverse the conviction for attempted first degree trafficking

in stolen property. The case is remanded to the Superior Court for further action consistent with this opinion.

GREEN and MUNSON, JJ., concur.

Review denied at 113 Wn.2d 1014 (1989).