IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36412-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| MODESTO BRAVO GONZALEZ, JR., | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Washington's privacy act restricts the authority of undercover law enforcement agents to intercept or record private conversations through devices such as body wires. Under the privacy act, the use of surreptitious recording devices must be supported by a court order and based on a case-specific showing of particular need. The required showing of need is not onerous, but it must be something more than generalized truisms.

In Modesto Bravo Gonzalez's case, law enforcement obtained intercept orders authorizing placement of a body wire on a confidential informant (CI) who was engaged in several undercover drug buys. The applications for the orders stated not only the truism that law enforcement wanted to corroborate the CI's testimony, but also that the specific facts of the case showed potential risks to the CI's safety that could be mitigated by the

use of a body wire. Under these circumstances, the intercept orders were warranted. We therefore affirm the trial court's denial of Mr. Gonzalez's motion to suppress the fruits of the orders.

## FACTS

This case revolves around four controlled drug buys that took place inside Modesto Bravo Gonzalez's home. A CI facilitated the buys. After the first controlled buy, law enforcement obtained two intercept orders, allowing them to place a wire on the CI and record the CI's interactions with Mr. Gonzalez.

The two applications for intercept orders were authored by a detective working with the CI. Both applications explained Mr. Gonzalez had a practice of selling drugs from inside his home and access to at least two firearms within the home, including a sawed-off shotgun. The second application disclosed the CI had a pending drug case as well as several prior convictions. According to the applications, the plan was for the CI to make additional controlled buys from Mr. Gonzalez inside of Mr. Gonzalez's home.

After the CI participated in three additional controlled buys while using a body wire, officers obtained a search warrant for Mr. Gonzalez's home.

In executing the warrant, officers found heroin along with paraphernalia related to drug use and drug trafficking. In the home's basement, officers found three firearms.

2

Two shotguns, one of which had a sawed-off barrel, were located in a boarded-up area under the stairwell. A pistol was found, among some clutter, near a bed. Officers were able to recover fingerprints from at least one of the firearms. The prints did not correspond to Mr. Gonzalez.

The State charged Mr. Gonzalez with several felony offenses, including four counts of unlawful delivery of a controlled substance (one for each undercover sale), two counts of first degree unlawful possession of a firearm, one count of possession of an unlawful firearm (the sawed-off shotgun), one count of unlawful possession of heroin with intent to deliver, and one count of maintaining a drug property.

After unsuccessfully moving to suppress the fruits of the intercept orders and search warrant, Mr. Gonzalez exercised his right to a jury trial. The jury acquitted him of the charges related to the first two drug sales and convicted him of the remaining counts.

Mr. Gonzalez timely appeals.

ANALYSIS

In the published portion of this opinion we address Mr. Gonzalez's claim, made in a statement of additional grounds for review, that the intercept order was invalid because it was not based on a particularized showing of need. The remaining contentions are addressed in the unpublished portion of the decision.

*Intercept orders*

Washington's privacy act, chapter 9.73 RCW, generally prohibits law enforcement from intercepting or recording private conversations without full consent of all parties or one-party consent and a court order. *See* RCW 9.73.090(2); *State v. Roden*, 179 Wn.2d 893, 898-99, 321 P.3d 1183 (2014). Evidence obtained in violation of the act is subject to suppression and inadmissible at trial. RCW 9.73.050.

When the issue on appeal is the legitimacy of a privacy act order, our focus is somewhat unique. We do not defer to the trial judge who ruled on a motion to suppress the fruits of the order; the propriety of a suppression order is reviewed de novo. Instead, we focus on the decision of the judicial officer who initially authorized the intercept order. We accord "considerable discretion" to the initial intercept decision. *State v. Clark*, 129 Wn.2d 211, 237, 916 P.2d 384 (1996) (Alexander, J., concurring in part and dissenting in part). So long as the authorizing judge used the correct legal standard, we will uphold an intercept order based on minimally sufficient facts. *See State v. J.K.T.*, 11 Wn. App. 2d 544, 555, 455 P.3d 173 (2019) (quoting *State v. Manning*, 81 Wn. App. 714, 718, 915 P.2d 1162 (1996)).

Applications for intercept orders are governed by RCW 9.73.130. The statute identifies several factual prerequisites. Relevant here, an intercept application must

4

include "[a] particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ." RCW 9.73.130(3)(f).[1] This subsection is known as the particularity requirement.

The privacy act's particularity requirement is distinct from the particularity requirement imposed by the Fourth Amendment to the United States Constitution. The Fourth Amendment's particularity requirement mandates that a warrant specifically describe all items to be seized. *State v. Fairley*, 12 Wn. App. 2d 315, 319-20, 457 P.3d 1150 (2020). To be constitutionally sufficient, a warrant must narrowly describe the targets of a search so law enforcement does not improperly intrude into private areas for which they lack probable cause. *See State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992) (quoting *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)).

The privacy act's particularity requirement is less exacting. The statute provides safeguards against governmental intrusions even when constitutional rights are not

___

[1] Some of the factual prerequisites set forth in RCW 9.73.130 are not necessary in drug cases. RCW 9.73.090(5) ("true name of the nonconsenting party, or particular time and place for the interception" not necessarily required if unknown at the time of application). However, the particularity requirement of RCW 9.73.130(3)(f) remains applicable.

5

implicated due to one-party consent. *See United States v. White*, 401 U.S. 745, 751, 91 S. Ct. 1122, 28 L. Ed. 2d 453 (1971) (Fourth Amendment does not prohibit intercepting conversations when one party consents.); *State v. Salinas*, 119 Wn.2d 192, 197, 829 P.2d 1068 (1992) (WASH. CONST. art. 1, § 7 does not prohibit intercepting conversations when one party consents). As a matter of constitutional law, law enforcement officers enjoy broad discretion to decide whether to record undercover conversations through devices such as body wires. Washington's privacy act is designed to limit this discretion. *State v. D.J.W.*, 76 Wn. App. 135, 145, 882 P.2d 1199 (1994), *aff'd*, *State v. Clark*, 129 Wn.2d 211, 237, 916 P.2d 384 (1996). The privacy act does not require a showing of absolute necessity to obtain an intercept order. *See State v. Cisneros*, 63 Wn. App. 724, 729, 821 P.2d 1262 (1992). What is contemplated is a flexible, practical assessment of whether law enforcement has shown an intercept warrant is justified in a particular case. *State v. Platz*, 33 Wn. App. 345, 349-50, 655 P.2d 710 (1982).

While the privacy act's particularity requirement is not onerous, it still must consist of something more than a "boilerplate" showing of need. *Manning*, 81 Wn. App. at 720. Evidence obtained through an intercept order will invariably be helpful to the State in securing a conviction. *Id.* But mere helpfulness is insufficient. To meet the terms of the

privacy act, an intercept application must make a case-specific showing of need, so as to guard against orders being made available in all cases as a matter of course.

The totality of the facts alleged here were sufficient to meet the privacy act's particularity requirement. The intercept applications did not simply contain standard, boilerplate information. Law enforcement did not merely recite the truism that testimony from a CI would be enhanced by corroboration. Instead, the applications made clear safety was also a significant concern. The facts set forth in the intercept applications reveal the CI reported seeing firearms in Mr. Gonzalez's home, including a sawed-off shotgun. Given the undercover purchases were to take place inside of the home, standard law enforcement surveillance methods were insufficient to address the CI's safety. Officers needed an intercept order to "listen and be prepared to move in if necessary." *State v. Knight*, 54 Wn. App. 143, 151, 772 P.2d 1042 (1989). The issuing judge therefore had a tenable factual basis to issue the intercept orders.

We affirm the trial court's denial of Mr. Gonzalez's motion to suppress the fruits of the intercept orders.

The panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no

precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so

ordered.

*Sufficiency of the evidence—unlawful firearm possession*

Mr. Gonzalez contends the State failed to submit sufficient evidence to convict

him of unlawful possession of firearms because the evidence at trial showed nothing more

than mere proximity to the three guns seized by law enforcement. We disagree.

A sufficiency challenge such as Mr. Gonzalez's is governed by an extremely

deferential standard of review. *See In re Pers. Restraint of Martinez*, 171 Wn.2d 354,

364, 256 P.3d 277 (2011). The test is "'whether, after viewing the evidence in the light

most favorable to the [State], any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *State v. Green*, 94 Wn.2d

216, 221, 616 P.2d 628 (1980)). All reasonable inferences from the evidence must be

drawn in favor of the State and interpreted most strongly against the defendant. *Id.*

(quoting *State v. Walton*, 64 Wn. App. 410, 415, 824 P.2d 533 (1992)).

The totality of the trial evidence provided a substantial basis for showing

Mr. Gonzalez was in constructive possession of the firearms. At the time of the search,

only Mr. Gonzalez, his mother, and his 11-year-old daughter lived at the residence.

Mr. Gonzalez exercised control over the entirety of the premises, setting rules about who

could come and go from the home in order to protect his young daughter. Testimony from the CI indicated Mr. Gonzalez was aware the firearms were in the home, as they were visible during some of the CI's undercover activities. This combination of circumstances permitted an inference of constructive possession. *State v. Partin*, 88 Wn.2d 899, 906, 567 P.2d 1136 (1977).

Mr. Gonzalez points out someone else's fingerprints were found on at least one firearm and a third party used to live in the basement where the firearms were found. These facts do not undermine the jury's verdict. The fingerprints show only that the firearms may have been possessed by more than one person. "Constructive possession need not be exclusive." *State v. Mobley*, 129 Wn. App. 378, 384, 118 P.3d 413 (2005). In addition, the former tenant no longer lived at the residence at the time of the search. Nor was the tenant present at the time the CI reported seeing the firearms. Firearms are valuable items. A sawed-off shotgun is generally illegal to possess. The jury was entitled to infer that the tenant would not have left an illegal firearm out in plain view while not at the residence or that they would have mistakenly abandoned the firearms when they moved out. There was sufficient evidence to establish constructive possession.

*Sufficiency of the evidence—school bus stop enhancement*

The jury found Mr. Gonzalez's drug offenses occurred within 1,000 feet of a protected zone (a school bus route stop), as contemplated by RCW 69.50.435(1)(c). The State's evidence on this point consisted largely of testimony from a law enforcement sniper. Relying on his familiarity with estimating distances, the sniper testified the distance between the school bus stop and Mr. Gonzalez's address was "around 300 feet." 2 Report of Proceedings (Sept. 12, 2018) at 241.

Mr. Gonzalez claims the sniper's testimony was not good enough. According to Mr. Gonzalez, the State needed to provide a precise measurement of the distance between his offense and the school bus stop. We disagree.

Nothing in RCW 69.50.435 specifies the manner in which the State must prove its case. Here, the State used a witness with experience in estimating distances through his work as a law enforcement sniper. The witness estimated the distance at 300 feet. This was well below the outer limit required by the statute. Given the deferential standard of proof applicable to our review, the State's evidence was sufficient.

Because the sniper's testimony placed Mr. Gonzalez's home in close proximity to the school bus stop, the sufficiency of the State's case did not turn on a precise measurement of the distance from the school bus stop to the location of the undercover

sales inside Mr. Gonzalez's home. *Cf. State v. Jones*, 140 Wn. App. 431, 437-38, 166 P.3d 782 (2007) (reversing when no direct measurements between school bus stop and site of offense and distance estimated as 750 feet); *State v. Clayton*, 84 Wn. App. 318, 322-23, 927 P.2d 258 (1996) (reversing when no direct measurement between school and site of offense and distance estimated as about 927 feet). The sniper's testimony here left a 700-foot buffer between the site of Mr. Gonzalez's home and the outer edge of the school bus stop zone. This distance exceeds the length of two football fields. According to the trial testimony, Mr. Gonzalez lived in a residential area in a three-bedroom home. Given this evidence, it was reasonable for the jury to infer Mr. Gonzalez's offense conduct occurred well within the outer bounds of the 1,000-foot school bus stop zone. The evidence was sufficient.

*Ineffective assistance of counsel*

To show ineffective assistance of counsel, the defendant must demonstrate: (1) counsel's performance was deficient, and (2) counsel's errors were serious enough to prejudice the defendant. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to meet either criterion precludes relief. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012).

Mr. Gonzalez asserts defense counsel was ineffective in interviewing the CI

without a defense witness present to supply possible impeachment testimony. This claim

fails as Mr. Gonzalez cannot show prejudice.

The only possible impeachment testimony at issue in Mr. Gonzalez's case went to

the CI's claim that they could not remember whether they used drugs the day of the first

undercover drug buy. The CI admitted to using drugs approximately every other day during

the time period. This use violated the confidential informant contract. Nevertheless, the CI

believed they did not use drugs on any of the days of the undercover work, as that would

have been detected by law enforcement. Defense counsel proffered the CI had admitted

during a pretrial interview to the use of drugs on the day of the second undercover drug

buy.

Regardless of whether defense counsel performed deficiently in conducting

an interview without a defense witness to supply potential impeachment testimony,[2]

Mr. Gonzalez cannot show prejudice. The jury acquitted Mr. Gonzalez of the drug charge

stemming from the day on which there was a dispute as to the CI's testimony. The CI also

---

[2] Contrary to Mr. Gonzalez's claim, a law enforcement officer was present during the interview and could have been a witness to any inconsistent statements. The problem for Mr. Gonzalez was the officer did not recall the CI making the statement proffered by defense counsel. A defense witness would not necessarily have had a different memory. Thus, it is not at all clear counsel's conduct was deficient.

admitted to a violation of the confidential informant agreement by using drugs during the general time period of the undercover work. Given these circumstances, we do not perceive any possibility that impeachment testimony by a defense witness would have had an appreciable impact on Mr. Gonzalez's case.

*Juror unanimity—multiple acts*

Mr. Gonzalez contends the trial court violated his right to a unanimous jury verdict because the State submitted evidence of multiple acts of possession of heroin with the intent to deliver without electing which act it relied on to convict him. This claim fails. Possession with intent to distribute is an offense involving a continuing course of conduct. *State v. Love*, 80 Wn. App. 357, 362, 908 P.2d 395 (1996). Thus the jury need not be unanimous as to what evidence it relied on in rendering a guilty verdict. *Cf. State v. King*, 75 Wn. App. 899, 903, 878 P.2d 466 (1994) (unanimity required in context of simple possession).

*Juror unanimity—alternative means*

Mr. Gonzalez argues the offenses of unlawful possession of a firearm and maintaining a drug dwelling are both alternative means crimes, requiring either juror unanimity or sufficient evidence as to each of the alternative means.

13

Mr. Gonzalez's unanimity claim with respect to the crime of unlawful possession of a firearm fails based on *State v. Barboza-Cortes*, 194 Wn.2d 639, 646, 451 P.3d 707 (2019) (holding that statute prohibiting a person from owning, possessing, or having control over a firearm is not an alternative means crime).

In contrast, the State correctly concedes Mr. Gonzalez's challenge with respect to his drug dwelling conviction. The drug dwelling statute proscribes two alternative means of criminal conduct: (1) maintaining a place that others resort to for drug use or (2) using a property for drug storage and sales. RCW 69.50.402(1)(f). Because the trial court did not issue a unanimity instruction as to these two alternative means and because the evidence was insufficient to show drug use by others (as opposed to drug sales or storage) took place at Mr. Gonzalez's home, the conviction for maintaining a drug dwelling must be reversed. *State v. Fernandez*, 89 Wn. App. 292, 300, 948 P.2d 872 (1997).

*Legal Financial Obligations (LFOs)*

Mr. Bravo Gonzalez claims his judgment contains two LFO errors: imposition of interest in violation of RCW 10.82.090(1) and a criminal filing fee. The State correctly concedes both errors. Nonrestitution interest is no longer applicable, RCW 10.82.090(1), and the reference to the $200 criminal filing fee appears to be a scrivener's error. We remand with instructions to strike the interest provision and the criminal filing fee.

No. 36412-7-III
*State v. Bravo Gonzalez*

*Search warrant*

In his statement of additional grounds of review, Mr. Gonzalez argues the trial

court should have suppressed the warrant to search his home because the warrant

application contained material misstatements or omissions.[3] *See Franks v. Delaware*,

438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). We are unpersuaded.

At trial, Mr. Gonzalez's sole argument under *Franks* was that the application

failed to disclose the CI was using drugs at the time of the undercover drug buys.

Evidence of the CI's drug use would have undermined their credibility; however, there

was no evidence indicating the search warrant affiant knew the CI was using drugs or the

affiant recklessly ignored evidence of drug use. Given this circumstance, Mr. Gonzalez

failed to proffer a sufficient challenge to the warrant under *Franks*. *See State v. Garrison*,

118 Wn.2d 870, 872, 827 P.2d 1388 (1992) (*Franks* allegations must rise to a deliberate

falsehood or reckless disregard of the truth; mere negligence or innocent mistakes are not

sufficient.).

---

[3] Mr. Gonzalez also disputes whether probable cause supported the interception of his conversations, whether that probable cause was sufficiently "timely," and whether his relationship with an associate was relevant to the intercept applications. We decline to review these unpreserved challenges. *See* RAP 2.5(a).

15

CONCLUSION

Mr. Gonzalez's conviction for maintaining a drug dwelling is reversed. This matter is remanded with instructions to strike interest from nonrestitution LFOs and the criminal filing fee from the judgment. The matter is otherwise affirmed.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.

16