[No. 13735-2-I.   Division One.   May 5, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. JACK E. IRWIN, SR., ET AL, *Appellants*.

*Jeffrey Steinborn*, for appellants.

*David S. McEachran, Prosecuting Attorney*, and *Martha V. Gross, Deputy*, for respondent.

Ringold, A.C.J.—At a bench trial Jack E. Irwin, Sr. and Jack E. Irwin, Jr. were found guilty of several violations of the Uniform Controlled Substances Act, RCW 69.50, and one count each of conspiracy. They appeal arguing: (1) that conversations taped in violation of the Privacy Act, RCW 9.73, were improperly admitted; (2) that the affidavits supporting the search warrants of their property were invalid; (3) that they received ineffective assistance of counsel; (4) that a contingent fee arrangement between Vince Kochajda, an informer, and the police violated the Irwins' due process rights; (5) that they were prejudiced by an order allowing the State to amend the information to include a conspiracy charge; (6) that there was insufficient evidence of a conspiracy; and (7) that there was insufficient evidence to find Irwin, Jr. guilty of count 3, unlawful delivery of cocaine on April 27, 1983. The trial court entered lengthy findings of fact, and the following recitation is a summary of these findings.[1]

In January 1983, Vince Kochajda, who had recently been arrested, expressed the desire to give information about drug trafficking in Whatcom County. He indicated that Jack E. Irwin, Sr. and Jack E. Irwin, Jr. were conducting drug transactions at their trailer in rural Whatcom County. Responding to this information, the Whatcom County Sheriff's Office in conjunction with the Bellingham Police Department, the State Patrol, and the Drug Enforcement Administration began surveillance of the Irwins' trailer.[2]

The police set up their operation in the woods opposite

---

[1]Error was assigned to few of the trial court's findings, and those to which error was not assigned are considered verities on appeal. *State v. Bowers,* 36 Wn. App. 119, 672 P.2d 753 (1983). Many of the findings that the State presented to the trial court were extracted verbatim from the affidavits supporting the search warrants. This is a questionable practice, because some of the information in the sworn affidavits was not elicited through testimony at trial. In addition, some of the findings still included the phrase "your affiant," which has no place in findings of fact made by the trial court.

[2]For simplicity all of the law enforcement agencies will be referred to collectively as the police.

the trailer and utilized binoculars and a camera with a Questar scope. If the police had been in the road in front of the trailer, all of their observations could have been made with the naked eye. Over a few months the police observed numerous instances of people arriving at the trailer and remaining only for short periods of time. Some of the people were known to be implicated in the drug business in Skagit County. Often people returning to their vehicles were carrying something in their hands or appeared to be concealing items on their persons. During the investigation the police did not discover any legitimate business being conducted at the trailer.

On April 11, 1983, the police spoke with Jeanial Smull, who became interested in providing information about drug trafficking because of the effect drug use was having on her marriage. She knew about the Irwins' involvement in drug trafficking and agreed to make controlled drug purchases from them. On April 14, she made a controlled purchase of cocaine from Irwin, Jr., which was recorded by a tape recorder concealed in her clothing. On April 20, she again purchased cocaine at the trailer, but this time from Irwin, Sr. This transaction was also recorded.

On April 27, Smull returned to the trailer and purchased more cocaine from Irwin, Sr., while Irwin, Jr. was present. Both Irwins questioned her about possibly being an undercover agent, but she convinced them she was not. April 27, 1983, was the last time Smull used a tape recorder. On May 24, 1983, Smull made a controlled buy from Irwin, Sr. and witnessed Irwin, Sr. sell cocaine to another individual.

On May 26, 1983, acting under authority of two warrants, the police conducted a search of the trailer and Irwin, Jr.'s house. They discovered a large amount of cocaine, money, and drug paraphernalia at both locations. Also found at the trailer were record books of drug transactions.

Jack Irwin, Jr. was charged with two counts of unlawfully delivering cocaine in violation of RCW 69.50.401(a) for the events of April 14 and 27, 1983; one count of possession of cocaine with intent to deliver in violation of RCW 69.50-

.401(a) for the events of May 26, 1983; and one count of conspiracy to deliver cocaine in violation of RCW 69.50.407 for the events that took place between May 1 and 26, 1983.

Jack Irwin, Sr. was charged with three counts of unlawfully delivering cocaine for the events of April 20, 27, and May 24, 1983; one count of possession with intent to deliver cocaine for the events of May 26, 1983; and one count of conspiracy to deliver for the events that took place between May 1 and 26, 1983.

The Irwins waived a jury trial. The trial court found Irwin, Jr. guilty on four counts and sentenced him to 40 years in prison. Irwin, Sr. was found guilty on five counts and sentenced to 50 years in prison.

RCW 9.73—RECORDING PRIVATE CONVERSATIONS

On March 11, 1983, District Court Judge David Rhea authorized the recording of conversations between a confidential informant, later revealed as Kochajda, and the Irwins. This authorization was extended on March 18 for another 7–day period. Two attempts were made to record conversations pursuant to these authorizations. The first attempt on March 11 failed because the recorder malfunctioned. The second attempt occurred on March 21, 1983, but the recording was unintelligible. No recording, authorized on March 11 or 18, 1983, was presented in evidence at trial.

Two new applications for authorization to tape conversations were granted on April 14 and 27, 1983. The drug transactions that occurred on April 14, 20, and 27, 1983, between Smull and the Irwins were recorded under these authorizations, and the tapes were admitted in evidence.

A
RCW 9.73.130(3)(f)

The Irwins contend that the authorizations to tape conversations between the informants and the Irwins failed to comply with RCW 9.73.130(3)(f). That statute requires that applications for authorization to record private communications contain

[a] particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ . . .

The remedy available to a defendant whose conversations are illegally recorded in violation of RCW 9.73 is suppression of the recordings. *State v. Kichinko,* 26 Wn. App. 304, 310–11, 613 P.2d 792 (1980). The only recordings we are concerned with are those between Smull and the Irwins, because the Kochajda recordings were not used at trial or to obtain any search warrant.[3]

The affidavits submitted to the district court judge who authorized the recordings contained sufficient information to satisfy RCW 9.73.130(3)(f). The Irwins would not deal with new parties, and the introduction of a law enforcement officer was not possible. Attempting to introduce an officer would endanger the officer's life.

The Irwin property was enclosed by a chain link fence, protected by guard dogs, and the neighbors in the area maintained a lookout for strangers. Previous attempts to gain access to the neighboring property met with no success, and normal surveillance was difficult. The difficulty of normal surveillance, danger of introducing an undercover officer, and reliance on an informant's testimony were sufficient facts to meet the requirements of RCW 9.73.130(3)(f) and justified recording of the conversation. *See Kichinko.*

B
RCW 9.73.130(4) and (5)

The Irwins challenge the recordings, because the Irwins assert that the requirements of RCW 9.73.130(4) and (5) were not met. RCW 9.73.130 provides in part:

Each application for an authorization to record communications or conversations . . . shall state:

---

[3]For this reason there is no need to consider the Irwins' argument that the authorizations related to the Kochajda recordings were invalid because Kochajda allegedly did not voluntarily submit to the procedure.

. . .

(4) Where the application is for the renewal or extension of an authorization, a particular statement of facts showing the results thus far obtained from the recording, or a reasonable explanation of the failure to obtain such results;

(5) A complete statement of the facts concerning all previous applications, known to the individual authorizing and to the individual making the application, made to any court for authorization to record a wire or oral communication involving any of the same facilities or places specified in the application or involving any person whose communication is to be intercepted, and the action taken by the court on each application . . .

The Smull recordings were made pursuant to authorizations of new applications and were not made under authority of an extension or renewal. Thus RCW 9.73.130(4) does not apply.

All of the affidavits in support of the applications contained a complete statement listing all prior applications and the action taken by the court as to each application. In addition, all of the prior applications were included in the subsequent affidavits by reference. This satisfies the requirements of RCW 9.73.130(5).

## C
### RCW 9.73.140

The Irwins argue that the State's failure to timely comply with the notice requirement of RCW 9.73.140 requires suppression of the tapes. RCW 9.73.140 requires that within 30 days after the termination of the authorized recording, the persons whose conversations were recorded must receive notice of the recording. The record on appeal does not establish the exact time that the Irwins were notified of the recordings, but the State admits no notice was given until after the charges were filed on May 26, 1983. This was more than 30 days after the authorizations for the recordings of March 20 and April 14, 1983, had expired.

■ There are no Washington cases concerning this issue; therefore, we look to the interpretation given to the

similar federal statute, 18 U.S.C. § 2518(8)(d). If a person does not receive the postintercept notice required by the statute, the conversations that were recorded are not automatically suppressed. *See United States v. Donovan*, 429 U.S. 413, 438–39, 50 L. Ed. 2d 652, 97 S. Ct. 658 (1977). Suppression is not required unless the defendants can demonstrate some prejudice resulting from the delayed notice. *United States v. Lawson*, 545 F.2d 557, 565 (7th Cir. 1975).

The Irwins received notice after the information was filed and well before trial commenced. They have not shown any resulting prejudice from the delay. We find *Lawson* persuasive, and there is no reason to suppress the tapes. *See Lawson*.[4]

## D
## RCW 9.73.120

■ The Irwins next argue that the tapes should be suppressed because the district court judge who issued the authorizations failed to file a report with the Administrator for the Courts as required by RCW 9.73.120. Again, we must look to the federal courts for guidance as no Washington court has yet interpreted this statute. 18 U.S.C. § 2518(10)(c), the comparable federal statute, has been held not to require suppression of any evidence for failure to meet its requirements. *United States v. Kohne*, 358 F. Supp. 1053, 1057 (W.D. Pa.), *aff'd*, 487 F.2d 1395 (3d Cir. 1973), *cert. denied*, 417 U.S. 918, 41 L. Ed. 2d 224, 94 S. Ct. 2624 (1974).

The purpose of these reports is to form the basis for a public evaluation of the statute and assure the community that the system of court ordered electronic surveillance is properly administered. *United States v. Chavez*, 416 U.S.

---

[4]The investigation of the Irwins continued over several months, and giving them notice of the recordings after 30 days would obviously have brought the investigation to a halt. RCW 9.73.140 provides, however, that on an ex parte showing of good cause to the court the notice requirement may be postponed or dispensed with. The State should have followed this procedure.

562, 577, 40 L. Ed. 2d 380, 94 S. Ct. 1849 (1974). There is no purpose served in suppressing evidence for a technical violation of this reporting requirement. *See Chavez.*

## E
### APPLICATION BY POLICE

■ The final argument made by the Irwins in regard to RCW 9.73 is that the statute requires all applications to be made by a prosecutor, not a police officer as was done here. The Supreme Court in *State v. O'Neill,* 103 Wn.2d 853, 866, 700 P.2d 711 (1985), decided that while applications made under RCW 9.73.040(1) might have to be made by the Attorney General or a county prosecutor, applications under RCW 9.73.090(2) may be made by any law enforcement officer. The applications here were made pursuant to RCW 9.73.090(2).

The trial court did not err by admitting the taped conversations into evidence. The remaining contentions and the court's answers to those contentions have no precedential value and, pursuant to RCW 2.06.040, will not be published. *In re Marriage of Freedman,* 23 Wn. App. 27, 33, 592 P.2d 1124 (1979).

The judgments and sentences are affirmed.

SWANSON and WEBSTER, JJ., concur.

Review denied by Supreme Court July 8, 1986.