[No. 26111-8-I.  Division One.  January 13, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR A. CISNEROS, *Appellant*.

*Mark Mestel* and *Mestel & Muenster,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *John Stansell, Deputy,* for respondent.

BAKER, J. — Arthur A. Cisneros appeals his convictions for delivery and conspiracy to deliver a controlled substance,

alleging the trial court erred in (1) refusing to suppress evidence obtained pursuant to an electronic intercept order; and (2) refusing to order an evidentiary hearing to determine whether there were material omissions from the intercept application. We affirm.

## FACTS

On January 21, 1988, a controlled purchase of cocaine was arranged by telephone between Cisneros and an informant. Detective David Bales of the Snohomish County Sheriff's office was present with the informant during the telephone conversation. Detective Bales also conducted physical surveillance of the purchase, which occurred at a restaurant. Detective Bales observed defendant accept payment for the cocaine, but did not observe the actual delivery, which occurred in the restroom of the restaurant. Delivery was accomplished not by Cisneros, but by a "Robert".

On January 27 and February 2, 1988, similar scenarios were repeated, except that Cisneros did not come to the meeting place himself. The deliveries were made by "Robert" and "Tony", but telephone contact was always with Cisneros. Detective Bales was present and observed these transactions as he had the first one.

During the February 2 transaction, "Robert" told the informant that the cocaine came directly from Cisneros, who was a good supplier. After the transaction, Detective Bales followed "Robert" to a residence where he found a car registered to Cisneros. The same car was found parked there on subsequent occasions.

In several telephone conversations, Cisneros told the informant that he would not meet or talk with anyone he did not know, and would not deliver cocaine himself. Defendant stated that the persons who delivered the cocaine were employed by him.

On February 3, Detective Bales obtained authorization to intercept and record telephonic and personal conversations of the informant with Cisneros and his runners. The application stated that normal investigative techniques had

proven insufficient because Cisneros refused to talk to unknown persons (undercover officers). The application also stated that recording the conversations would help the State rebut a possible allegation of entrapment and would enhance the credibility of the informant, who had a criminal background. The order authorizing interception found that "[n]ormal investigative techniques reasonably appear to be unlikely to obtain convincing, accurate evidence of the crimes".

On or about February 4, another drug transaction occurred and was recorded by the informant. Cisneros was charged with delivery of cocaine in the January 21 transaction, and conspiracy to deliver cocaine in the transactions of January 21 and 27, February 2, 4, and 5, 1988. Defendant's motion to suppress the evidence obtained pursuant to the intercept order was denied. An amended information narrowed the charges to delivery of cocaine on January 21 and conspiracy to deliver cocaine on February 4. Cisneros was convicted of these charges in a stipulated trial and sentenced within the standard range.

### MOTION TO SUPPRESS

Federal Statute.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* (the Act) governs the interception, recording and disclosure of wire, oral and electronic communications under federal law. The Act is applicable to local law enforcement officers, 18 U.S.C. § 2510(7), and provides for the exclusion of illegally intercepted evidence in state court. 18 U.S.C. § 2515.

Under the Act, it is not unlawful for a person, acting under color of law and without judicial authorization, to intercept a communication where one party consents to the interception. 18 U.S.C. § 2511(2)(c); *United States v. Caceres*, 440 U.S. 741, 744, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979); *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990). Since the informant in this case consented to the interception, there was no violation of the federal Act.

Federal Constitution.

█ Wiretaps obtained with the consent of one party to a conversation do not violate the Fourth Amendment. *United States v. Zemek*, 634 F.2d 1159, 1164 (9th Cir. 1980), *cert. denied*, 450 U.S. 916 (1981); *United States v. Keen*, 508 F.2d 986, 989 (9th Cir. 1974), *cert. denied*, 421 U.S. 929 (1975).

> [A]s no one has a constitutionally protected expectation that the person to whom he voluntarily reveals incriminating information will keep it secret, the consensual interceptions permitted under this provision [18 U.S.C. § 2511(2)(c)] do not offend the Fourth Amendment.

*United States v. Hodge*, 539 F.2d 898, 905 (6th Cir. 1976), *cert. denied*, 429 U.S. 1091 (1977).

Washington Statute.

RCW 9.73.090(2) provides, in pertinent part:

> It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation *where the officer is a party to the communication or conversation or one of the parties to the communication or conversation has given prior consent* to the interception, recording, or disclosure: *Provided*, That prior to the interception, transmission, or recording the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a nonconsenting party for a reasonable and specified period of time, if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony[.]

(Italics ours.) RCW 9.73.130 provides:

> Each application for an authorization to record communications or conversations pursuant to RCW 9.73.090 as now or hereafter amended shall be made in writing upon oath or affirmation and shall state:
>
> . . . .
>
> *A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ[.]*

(Italics ours.) RCW 9.73.130(3)(f).

█ A judge issuing an intercept order has considerable discretion to determine whether the statutory safeguards

have been satisfied. "The reviewing court's role is not to review the application's sufficiency de novo, but 'to decide if the facts set forth in the application were minimally adequate to support the determination that was made'." *State v. Knight*, 54 Wn. App. 143, 150-51, 772 P.2d 1042 (quoting *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.), *cert. denied*, 431 U.S. 960 (1977)), *review denied*, 113 Wn.2d 1014 (1989). Failure to comply with the statutory safeguards requires exclusion of the evidence illegally obtained. *State v. Irwin*, 43 Wn. App. 553, 557, 718 P.2d 826, *review denied*, 106 Wn.2d 1009 (1986); *State v. Kichinko*, 26 Wn. App. 304, 310-11, 613 P.2d 792, *review denied*, 94 Wn.2d 1011 (1980).

■ The showing required of law enforcement officials under RCW 9.73.130(3)(f) is not one of absolute necessity. "[P]olice officials need not exhaust all alternatives, but must seriously consider other techniques, and the authorizing court must be informed of the reasons the alternatives have been or likely will be inadequate." *Knight*, 54 Wn. App. at 150 (citing *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir.), *cert. denied*, 474 U.S. 1034 (1985)).

In *State v. Platz*, 33 Wn. App. 345, 655 P.2d 710 (1982), *review denied*, 99 Wn.2d 1012 (1983), this court held the trial court did not err in refusing to exclude a tape-recorded confession made to an undercover officer in a first degree murder case. The appellant argued that the police application did not meet the statutory requirements because the undercover officer could testify to the conversation, thereby obviating the need for a recording. We rejected the argument, finding that interception was necessary to avoid the case being reduced to a one-on-one swearing contest. *Platz*, 33 Wn. App. at 349-50.

In *State v. Irwin*, *supra*, where drug transactions were recorded by an informant, we held the police application was adequate where it stated that defendants would not deal with new parties (undercover officers) and physical surveillance was impossible. *Irwin*, 43 Wn. App. at 557.

■ As in *Irwin*, it was impossible here for police to introduce an undercover officer. As in *Platz*, the recording

avoided a one-on-one swearing contest. While we do not wish to extend the relaxed standard of *Irwin* and *Platz* any further, the facts here are not sufficiently distinguishable to warrant departure from those precedents.

■ Appellant urges this court to rely on several federal cases cited in his brief. While the provisions of the federal statute, 18 U.S.C. § 2518(1)(c) and (3)(c), are nearly identical to those of the Washington statute, we decline to rely on the federal cases for two reasons. First, the federal requirement of judicial authorization applies only where no party has consented to the wiretap. Concerns about individual privacy are more acute in that situation than in the 1-party consent situation addressed by the Washington statute at issue here. *See Platz*, 33 Wn. App. at 349 n.1.

Second, the federal cases cited by appellant appear to require a greater showing of necessity for interception than is required in the Washington cases. In *United States v. Ippolito*, 774 F.2d 1482 (9th Cir. 1985), the court stated that the purpose of the statutory safeguards was

> to prevent the government from making general allegations about classes of cases and thereby sidestepping the requirement that there be necessity in the particular investigation in which a wiretap is sought. . . .
>> we must be careful not to permit the government merely to characterize a case as a "drug conspiracy" . . . that is therefore inherently difficult to investigate. The affidavit must show with specificity why in *this particular investigation* ordinary means of investigation will fail.

*United States v. Ippolito*, 774 F.2d at 1486 (quoting *United States v. Robinson*, 698 F.2d 448, 453 (D.C. Cir. 1983)). *See also United States v. Simpson*, 813 F.2d 1462, 1472 (9th Cir.), *cert. denied*, 484 U.S. 898 (1987); *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1976).

By contrast, the Washington courts have held that the issuing judge may take into account proof difficulties inherent in the type of crime alleged, *e.g.*, a gambling operation is essentially a telephone crime. *State v. Knight*, 54 Wn. App. at 151. Furthermore, this court has approved a wiretap

order where the only justification for the order was to bolster the credibility of the testifying undercover officer. *See State v. Platz*, 33 Wn. App. at 349 n.1.

Based upon these Washington cases, we are constrained to hold that the trial court did not abuse its discretion in issuing the order. We nevertheless caution that our decision should not be interpreted as permitting intercept orders where normal investigative techniques would suffice.

Washington Constitution.

Appellant argues that article 1, section 7 of the Washington State Constitution was violated by the interception authorized here. Article 1, section 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

The test cited by appellant for violations of this constitutional provision is whether the State "unreasonably intruded into the defendant's 'private affairs.' " *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984). However, a more complete quotation of *Myrick* shows that the test set forth there concerns *warrantless* searches:

> [T]he relevant inquiry for determining when a search has occurred is whether the State unreasonably intruded into the defendant's "private affairs." Const. art. 1, § 7 analysis . . . focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, *safe from governmental trespass absent a warrant.*

(Citations omitted. Italics ours.) *Myrick*, 102 Wn.2d at 510-11 (quoting Const. art. 1, § 7). The other case cited by appellant also involved a warrantless search. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

■ Appellant argues that because the intercept application failed to set forth the requisite degree of necessity, the interception was "without authority of law" and tantamount to a warrantless search. As discussed above, however, the application did set forth facts sufficient to support the intercept order, and thus the order had the authority of law. Appellant's argument to the contrary must fail.

### Evidentiary Hearing

■ Appellant argues that the trial court erred in refusing to hold an evidentiary hearing regarding alleged material omissions from the intercept application. In *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), the Supreme Court held that such a hearing must be held where the accused makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in a warrant affidavit. *Franks*, 438 U.S. at 155-56.[1] A hearing is required whether the falsity occurs through misstatements or through omissions. *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988).

Appellant claims there were two material omissions here. First, he points out that police reports reveal that certain currency used in the controlled purchases was photocopied and some of the photocopied bills were found in appellant's possession when he was arrested. While this evidence is significant, it was not possible for the police to have known prior to appellant's arrest whether the bills would be found in his possession upon arrest. The currency involved in the transactions may have been laundered by the time of arrest. Indeed, only two of the photocopied bills were found in appellant's possession when he was arrested. The omission from the affidavit of the fact that currency had been photocopied is therefore not a material omission.

Appellant secondly points out that more than one detective participated in physical surveillance of the drug pur-

---

[1] The full holding of *Franks* is as follows: "[W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56.

chases involved here. While it is true that Detective Bales' affidavit mentions only his own participation, this omission is not material. Testimony by several officers to the same facts observed by a single officer would not materially strengthen the State's case. For these reasons, the trial court did not err in refusing to hold an evidentiary hearing regarding the alleged material omissions.

The decision of the trial court is affirmed.

WEBSTER, A.C.J., and AGID, J., concur.

Review denied at 119 Wn.2d 1002 (1992).