[No. 34322–0–I.    Division One.    May 13, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. FREDDIE
L. MANNING, *Appellant*.

*Douglas J. Ende, Neil J. Philip*, and *Nielsen & Acosta*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Robert T. Reischling, Deputy*, for respondent.

BECKER, J. — Freddie Manning appeals his conviction for one count of possession of cocaine with intent to distribute. Manning challenges the adequacy of the police application for judicial authorization to intercept and record his conversations. The statement of facts submitted with the application adequately demonstrated that the police had probable cause to believe Manning was about to commit a felony and that normal investigative procedures were unlikely to succeed. Accordingly, we affirm.

## I.

The application for authorization contained the follow-

ing facts. In January 1993 an informant previously arrested on drug charges told officers of the Kent Police Department that a person named "Fred", whom he had known for more than a year, contacted him several times offering to purchase large quantities of cocaine. The informant provided the investigating officer, Detective Kellams, with certain identifying information about "Fred", including his race, approximate age, the make of his automobile, the location of his home, his telephone number, and that he carried a semi–automatic pistol. With this information Detective Kellams determined that the person described by the informant was Freddie L. Manning. Detective Kellams conducted several record checks confirming the accuracy of the information about Manning's residence and vehicles. He also learned that Manning had been previously arrested several times, once for carrying a concealed weapon.

A King County police detective told Detective Kellams that during a narcotics unit investigation of Manning eight months earlier, undercover officers had attempted to sell him one kilogram of cocaine. They called off the transaction after lengthy negotiations, in part because they believed it was too dangerous. They knew Manning possessed many firearms and liked to carry a concealed semi–automatic pistol. King County police had also conducted controlled buys of cocaine in small quantities from Manning in August 1992 through the use of a confidential witness.

The informant agreed to cooperate with the police in return for consideration on a pending criminal charge against him, but asked to remain confidential because of his fear of violent retaliation. The officers asked him to introduce an undercover officer to Manning. The informant called Manning and advised him that "Ruben" would be able to "take care of business". The informant gave Manning Ruben's telephone number, which was actually a number for Detective Navarette of the Seattle Police Department's narcotics unit.

Detective Kellams prepared an application for an order to intercept and record conversations with Manning under the authority of the one–party consent statute, RCW 9.73.090(2). After outlining the information obtained from the informant, the application described the proposed course of investigation: police detectives would be having undercover contact with Manning, and would make conversation concerning the sale of cocaine. Investigating officers would use an electronic recording device designed to record telephone conversations. During in–person meetings with Manning, an electronic transmitter would be installed on the detective's body.

After a district court judge approved the application, the police recorded several telephone conversations in which Manning discussed purchasing cocaine. Manning agreed to a meeting. At the meeting, Detective Kellams concealed an electronic transmitter on his body. As planned, Manning gave Detective Kellams approximately $3,000 for four baggies containing over four ounces of cocaine. A surveillance team listened to and recorded the conversations that took place during the meeting. Other officers arrested Manning and recovered cocaine from him.

Pursuant to RCW 9.73.050, Manning moved to suppress the evidence against him as having been obtained in violation of the provisions of RCW 9.73, Washington's Privacy Act. The trial court denied the motion and convicted Manning upon stipulated facts.

## II.

■ The Washington Privacy Act prohibits the interception and recording of private communications and conversations,[1] and such recordings are generally inadmissible.[2] One exception is that a police officer may intercept and record a conversation to which the officer is a party, or to which one party has given consent, provided the officer

[1] RCW 9.73.030(1).

[2] RCW 9.73.050.

obtains advance court approval.[3] The officer's application for an intercept order must satisfy several statutory conditions. At issue in the present case is: (1) whether the application for issuance of the electronic intercept order contained enough information to serve as the basis for a determination of probable cause,[4] and (2) whether the application sufficiently set forth the reasons for the probable inadequacy of other investigative techniques.[5] "The reviewing court's role is not to review the application's sufficiency de novo, but 'to decide if the facts set forth in the application were minimally adequate to support the determination that was made.' "[6] This standard applies in evaluating the probable cause determination as well as the showing of inadequacy of other investigative technique.[7]

## Probable Cause

■■ The issuing court must find "probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony".[8] Manning contends probable cause was lacking because the informant was not shown to be reliable. The parties would have us analyze this issue by using the constitutional two-pronged *Aguilar–Spinelli*[9] test adopted in *State v. Jack-*

---

[3]RCW 9.73.090(2).

[4]RCW 9.73.090(2).

[5]RCW 9.73.130(3)(f).

[6]*State v. Knight*, 54 Wn. App. 143, 150–51, 772 P.2d 1042 (1989) (quoting *United States v. Scibelli*, 549 F.2d 222, 226 (1st. Cir.), *cert. denied*, 431 U.S. 960 (1977)), *review denied*, 113 Wn.2d 1014 (1989).

[7]*State v. D.J.W.*, 76 Wn. App. 135, 882 P.2d 1199 (1994), *review granted*, 126 Wn.2d 1008 (1995).

[8]RCW 9.73.090(2).

[9]*Aguilar v. Texas*, 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d. 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 413, 89 S. Ct. 584, 21 L. Ed. 2d. 637 (1969).

*son.*[10] In *State v. D.J.W.*, 76 Wn. App. 135, 882 P.2d 1199 (1994), we held that analysis of probable cause in a Privacy Act matter was intended by the Legislature to be governed by the statute itself, not by constitutional probable cause principles.[11] But even under the *Aguilar–Spinelli* test, which is the only one the parties have briefed, the police adequately established the informant's reliability. The informant supplied details about Manning that the Kent police were able to corroborate, including the type of handgun Manning commonly carried, that Manning was active in the drug trade, and the fact that Manning was well known to King County police officials.[12] Because these details were not merely innocuous facts,[13] they gave "substance and verity" to the informant's report that Manning was engaged in dealing cocaine.[14] We conclude that the application established the reliability of the informant sufficiently to permit a determination of probable cause based on the information provided by the informant.

### Inadequacy of Normal Investigative Procedures

The application for court approval requires the submission of an affidavit providing, inter alia, "A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ".[15] The judicial order authorizing the interception and recording of Manning's conversations concluded: "Normal investigative techniques reasonably appear to be unlikely to succeed if tried". The issue is whether the facts in the application sufficiently supported that conclusion.

---

[10]*State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984).

[11]*D.J.W.*, 76 Wn. App. at 144–45.

[12]*Cf. Jackson*, 102 Wn.2d at 438, 445.

[13]*Cf. Jackson*, 102 Wn.2d at 438, 445.

[14]*Cf. Jackson*, 102 Wn.2d at 438.

[15]RCW 9.73.130(3)(f).

The State relies on the following justifications, recited in the application. The anticipated conversations were of primary importance to the investigation. Interception and recording would avoid a one–on–one swearing contest as to who said what, provide uncontroverted evidence of Manning's criminal intent, minimize factual confusion, and rebut anticipated allegations of entrapment. The application stated, "No more reliable evidence of the communications or conversations is available than a recording, or recordings, of the actual conversations. The spoken words are themselves the best evidence of criminal intent. No other investigative method is capable of capturing these words in such clear and admissible evidentiary form." In further justification, the application averred it was necessary "to intercept and record conversations at the earliest stage of case development to maintain the integrity and proper direction of the investigator."

The justifications recited above appear to have become boilerplate in applications under the Privacy Act. Such justifications merely support the truism that having a recording to play at trial is advantageous to the State in obtaining a conviction. They do not inform the issuing judge of reasons why, in this particular case, other procedures will not successfully resolve the investigation.

Boilerplate is antithetical to the statute's particularity requirement set forth in RCW 9.73.130(3)(f). The requirement for a "particular statement of facts" reflects the Legislature's desire to allow electronic surveillance under certain circumstances but not to endorse it as routine procedure. Before resorting to an application under RCW 9.73.130, the police must either try or give serious consideration to other methods and explain to the issuing judge why those other methods are inadequate in the particular case.[16] This is the critical inquiry to which the issuing judge and the trial judge must give their attention when reviewing an application. To approve an application

---

[16]*State v. Cisneros*, 63 Wn. App. 724, 729, 821 P.2d 1262, *review denied,* 119 Wn.2d 1002 (1992); *Knight*, 54 Wn. App. at 150.

that contains nothing more than general boilerplate declarations of the type set forth above would undermine the restrictive intent of the statute.

We do not read our prior cases as allowing generalities to fulfill the requirement for particularity. The particular facts presented for review have shown that police considered or tried other ways of investigating the case but found them impractical or unsafe.[17] *State v. Cisneros*[18] refers to an earlier decision, *State v. Platz*,[19] as having "approved a wiretap order where the only justification for the order was to bolster the credibility of the testifying undercover officer."[20] But the *Platz* decision itself relies on facts indicating that other investigative procedures had been used and that the homicide under investigation had nevertheless remained unsolved for nine months.[21] The desirability of avoiding a "one–on–one swearing contest" was simply an additional consideration.[22]

The application in the present case is adequate because it contains more than boilerplate recitals. Its particular facts establish that Manning had been the target of previous narcotics investigations that ended inconclusively. The police decided to terminate those prior operations in part because Manning was known to be armed and dangerous. These facts meet the requirement of RCW 9.73.130(3)(f). They show that introducing an undercover

---

[17]*See, e.g., State v. Irwin*, 43 Wn. App. 553, 557, 718 P.2d 826 (1986) (defendant refused to deal with new parties; police unable to gain access to neighboring property), *review denied*, 106 Wn.2d 1009 (1986); *Cisneros*, 63 Wn. App. at 726–27, 729 (attempts made to introduce undercover officers but defendant refused to talk to unknown persons); *State v. Lopez*, 70 Wn. App. 259, 266–67, 856 P.2d 390 (1993) (previous transactions showed that unaided surveillance was not possible), *review denied*, 123 Wn.2d 1002 (1994).

[18]*State v. Cisneros*, 63 Wn. App. 724, 729, 821 P.2d 1262 (1992) *review denied*, 119 Wn.2d 1002 (1992).

[19]*State v. Platz*, 33 Wn. App. 345, 655 P.2d 710 (1982), *review denied*, 99 Wn.2d 1012 (1983).

[20]*Cisneros*, 63 Wn. App. at 730–31.

[21]*Platz*, 33 Wn. App. 350–51.

[22]*Platz*, 33 Wn. App. at 350.

officer without the protection of a transmitter would be unlikely to succeed in this particular case because of the known risk to the officer.

We conclude that the application was sufficient to support the order authorizing the interception and recording of Manning's conversations.

GROSSE and COX, JJ., concur.

Review denied at 130 Wn.2d 1010 (1996).