# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                  Respondent,

        v.

JAMES TA'AFULISIA,

                  Appellant.

DIVISION ONE

No. 81735-3-I

ORDER GRANTING MOTION
FOR RECONSIDERATION,
WITHDRAWING OPINION,
AND SUBSTITUTING OPINION

The appellant, James Ta'afulisia, has filed a motion for reconsideration of the opinion filed on May 9, 2022. Respondent, State of Washington, has not filed a response. The court has determined that said motion should be granted and that the opinion filed on May 9, 2022 shall be withdrawn and a substituted unpublished opinion be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; it is further

ORDERED that the opinion filed on May 9, 2022, is withdrawn and a substitute unpublished opinion shall be filed.

Dwyer, J.

Andrus, C.J.

FILED
5/31/2022
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

        v.

JAMES TA'AFULISIA,

                Appellant.

DIVISION ONE

No. 81735-3-I

UNPUBLISHED OPINION

DWYER, J. — James Ta'afulisia[1] was convicted of multiple counts of murder and assault for his participation, with his younger brothers, in shootings in the homeless encampment known as the "Jungle" in 2016. James appeals, contending that the trial court erred when it admitted into evidence a one-party consent video recording of James and his brothers discussing the shootings because the recording was obtained in violation of Washington's privacy act, chapter 9.73 RCW. Because the recording was obtained in compliance with the requirements of the privacy act, we affirm.

---

[1] James and his younger brother, Jerome Ta'afulisia, are referred to by first name to avoid confusion. The youngest brother was tried and convicted separately in juvenile court and will be referred to as J.K.T. J.K.T.'s conviction was affirmed in State v. J.K.T., 11 Wn. App. 2d 544, 455 P.3d 173 (2019), review denied, 195 Wn.2d 1017 (2020).

I

On January 26, 2016, five young Samoan males wearing masks and dark clothing entered a section of the homeless encampment known as the "Jungle," located beneath a freeway in Seattle near the intersection of Interstates 5 and 90 and asked to purchase heroin. The section of encampment, known as the "Cave," was occupied by a group of people involved in selling and using crack cocaine and heroin. Two of the masked individuals had guns and began shooting the occupants of the encampment, killing two encampment occupants: James Tran and Jeanine Brooks. The masked attackers also shot three occupants who survived: Phat Nguyen, Amy Jo Shinault, and Tracy Bauer. Bauer told the police that the person who shot her was a man known as "Juice."

The next day, Foa'l Tautolo, known as "Lucky," contacted the police, claiming that his 17-year-old nephew[2] James had admitted to being the shooter. Lucky and his relative,[3] Reno Vaitlui, went to the Seattle Police Department's headquarters to be interviewed by Detective James Cooper. Lucky told the detective that James had called him and admitted to participating in the shooting because he needed money. Lucky and Reno also informed the detective that they were aware that James and his brothers owned three guns—a revolver, a sawed-off shotgun, and a .45 caliber handgun. Lucky agreed to assist the investigation by attempting to obtain a video recorded discussion with James about the shootings.

_____

[2] Lucky is related to the Ta'afulisia brothers' mother and refers to the boys as his nephews, although he is actually a more distant relation.
[3] Although Lucky and Reno are often referred to as brothers in the record, they are cousins.

Detective Cooper then prepared an application for a judicial authorization to make a one-party consent recording of a conversation with James. In the application, Detective Cooper included the information he had received from Lucky regarding James admitting to the shooting as well as corroborating information he had discovered independently and sought permission to record Lucky and James speaking about the shooting. The application also discussed why other investigative strategies were likely to fail under these circumstances.

The authorization order was signed by a superior court judge on January 19, 2016. The order found probable cause to believe that James had committed murder in the second degree and assault in the first degree.

The next day, Lucky was wired and made a recording of his visit with his nephews in the encampment. During the conversation, James admitted that he and his brothers, 16-year-old Jerome and 13-year-old J.K.T., had committed the shootings and had obtained several hundred dollars from the victims, some of which they gave to their mother for a hotel room and some of which they had used to purchase food. They also discussed the guns that they had used—a .22 caliber handgun and a .45 caliber handgun. Reno then purchased the .45 from the brothers.

James and Jerome were charged with two counts of felony murder in the first degree predicated on robbery and three counts of assault in the first degree. Both moved to suppress the video recording of the conversation with Lucky. The trial court denied the motions to suppress.

3

Jury trials were held for both James and Jerome in 2018 and again in 2019. Both juries proved unable to reach unanimous decisions. After a third jury trial, beginning in September 2019, James and Jerome were convicted as charged.

James appeals.

II

James contends that the trial court erred by admitting a video recording surreptitiously made by his uncle, Lucky, in which he and his brothers discuss the shooting. According to James, the video was inadmissible under Washington's privacy act because, when seeking authorization to record it, the police (1) failed to establish probable cause that James had committed a felony, and (2) failed to establish that the recording was necessary. As the police affidavit established both that probable cause existed as required by the privacy act and that normal investigative procedures were likely to fail, we disagree.[4]

Washington's privacy act, chapter 9.73 RCW, is one of the most restrictive electronic surveillance laws in the country. State v. Roden, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014). The act generally prohibits the admission at trial of recorded conversations or communications obtained without the consent of all parties to the conversation. RCW 9.73.030; Roden, 179 Wn.2d at 898. "Failure to suppress evidence obtained in violation of the act is prejudicial unless, within

---

[4] We note that no additional probable cause was required to be established in order to record James's brothers, Jerome and J.K.T. "[C]onversations or communications recorded 'incident to a lawfully recorded or intercepted communication or conversation pursuant to [RCW 9.73.090] shall be lawful and may be divulged.'" J.K.T., 11 Wn. App. 2d at 555 (quoting RCW 9.73.090(2)).

4

reasonable probability, the erroneous admission of the evidence did not materially affect the outcome of the trial." State v. Christensen, 153 Wn.2d 186, 200, 102 P.3d 789 (2004) (citing State v. Porter, 98 Wn. App. 631, 638, 990 P.2d 460 (1999)).

However, RCW 9.73.090 allows conversations recorded without the consent of all parties to be admissible under certain circumstances.

> It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation where the officer is a party to the communication or conversation or one of the parties to the communication or conversation has given prior consent to the interception, recording, or disclosure: PROVIDED, That prior to the interception, transmission, or recording the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a nonconsenting party for a reasonable and specified period of time, if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony.

RCW 9.73.090(2).

RCW 9.73.090(2) further states that "[a]ny recording or interception of a communication or conversation incident to a lawfully recorded or intercepted communication or conversation pursuant to this subsection shall be lawful and may be divulged."

An application for an order authorizing a one-party consent recording must comply with the requirements set forth in RCW 9.73.130. State v. D.J.W., 76 Wn. App. 135, 144-45, 882 P.2d 1199 (1994), aff'd, 129 Wn.2d 211, 916 P.2d 384 (1996). An order based on a faulty application not in compliance with RCW 9.73.130 is unlawful, and any recording authorized by such an order is

inadmissible as evidence. State v. Kichinko, 26 Wn. App. 304, 310-11, 613 P.2d 792 (1980). The following information must be included in an application for an order authorizing a one-party consent recording:

> (1) The authority of the applicant to make such application;
>
> (2) The identity and qualifications of the investigative or law enforcement officers or agency for whom the authority to record a communication or conversation is sought and the identity of whoever authorized the application;
>
> (3) A particular statement of the facts relied upon by the applicant to justify his or her belief that an authorization should be issued, including:
>
> (a) The identity of the particular person, if known, committing the offense and whose communications or conversations are to be recorded;
>
> (b) The details as to the particular offense that has been, is being, or is about to be committed;
>
> (c) The particular type of communication or conversation to be recorded and a showing that there is probable cause to believe such communication will be communicated on the wire communication facility involved or at the particular place where the oral communication is to be recorded;
>
> (d) The character and location of the particular wire communication facilities involved or the particular place where the oral communication is to be recorded;
>
> (e) A statement of the period of time for which the recording is required to be maintained, if the character of the investigation is such that the authorization for recording should not automatically terminate when the described type of communication or conversation has been first obtained, a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;
>
> (f) A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ;
>
> (4) Where the application is for the renewal or extension of an authorization, a particular statement of facts showing the results thus far obtained from the recording, or a reasonable explanation of the failure to obtain such results;
>
> (5) A complete statement of the facts concerning all previous applications, known to the individual authorizing and to the individual making the application, made to any court for authorization to record a wire or oral communication involving any

of the same facilities or places specified in the application or involving any person whose communication is to be intercepted, and the action taken by the court on each application; and
(6) Such additional testimony or documentary evidence in support of the application as the judge may require.

RCW 9.73.130.

"A judge issuing an intercept order has considerable discretion to determine whether the statutory safeguards [of the privacy act] have been satisfied." Porter, 98 Wn. App. at 634. Accordingly, when reviewing an application for an order authorizing a one-party consent recording, we "'decide if the facts set forth in the application were minimally adequate to support the determination that was made.'" State v. Manning, 81 Wn. App. 714, 718, 915 P.2d 1162 (1996) (internal quotation marks omitted) (quoting State v. Knight, 54 Wn. App. 143, 150-51, 772 P.2d 1042 (1989)).

A

James first contends that there was not an adequate showing of probable cause that James had committed a felony. This is so, he asserts, because the affidavit submitted by Detective Cooper lacked sufficient information from which the court could determine that Lucky was credible. The State counters that James's argument relies on an inapplicable legal standard—the two-pronged Aguilar-Spinelli[5] test for information resulting from an informant's tip—which is not required to show probable cause in the context of the privacy act. We agree with the State.

---

[5] Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

Probable cause is a quantum of evidence—that "which would 'warrant a man of reasonable caution in the belief' that a felony has been committed." Wong Sun v. United States, 371 U.S. 471, 479, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543 (1925)); see State v. Grande, 164 Wn.2d 135, 142, 187 P.3d 248 (2008) ("An equivalent quantum of evidence is required whether the inquiry is one of probable cause to arrest or probable cause to search, although each requires somewhat different facts and circumstances." (citing 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.1(b) (4th ed. 2004))).

Conversely, the Aguilar-Spinelli test is a method for "evaluating the existence of probable cause in relation to informants' tips." State v. Jackson, 102 Wn.2d 432, 435, 688 P.2d 136 (1984). Our state constitution requires that the Aguilar-Spinelli test be used when evaluating whether probable cause exists to justify a search warrant based on an informant's tip:

> [I]n evaluating the existence of probable cause in relation to informants' tips, the affidavit in support of the warrant must establish the basis of information and credibility of the informant.

Jackson, 102 Wn.2d at 433 (citing Spinelli, 393 U.S. 410; Aguilar, 378 U.S. 108).

But the probable cause requirement at issue here is not constitutional. Rather, it arises entirely from a statute. See RCW 9.73.090. Constitutional rights are not implicated by one-party consent recordings. See United States v. White, 401 U.S. 745, 751, 91 S. Ct. 1122, 28 L. Ed. 2d 453 (1971) (Fourth Amendment does not prohibit intercepting conversations when one party consents); State v. Salinas, 119 Wn.2d 192, 197, 829 P.2d 1068 (1992) (Wash. Const. art. 1, § 7

does not prohibit intercepting conversations when one party consents). Thus, our state constitutional requirements with regard to the method by which probable cause must be established for a search warrant are not applicable.

As we have previously explained,"[i]t is evident from an examination of the Privacy Act that the Legislature intended for the analysis of the probable cause issue in a Privacy Act matter to be governed by the terms of the statute itself, not by constitutional probable cause principles." D.J.W., 76 Wn. App. at 144; accord Manning, 81 Wn. App at 718-19 ("The parties would have us analyze this issue by using the constitutional two-pronged Aguilar-Spinelli test adopted in State v. Jackson. In State v. D.J.W., we held that analysis of probable cause in a Privacy Act matter was intended by the Legislature to be governed by the statute itself, not by constitutional probable cause principles." (footnotes and citation omitted)).

Thus, the relevant inquiry is not whether the two prongs of the Aguilar-Spinelli test are satisfied as to Lucky. Rather, it is whether Detective Cooper's affidavit shows sufficiently reliable information to establish a reasonable inference that James had committed a felony. "What is contemplated is a flexible, practical assessment of whether law enforcement has shown an intercept warrant is justified in a particular case." State v. Bravo Gonzalez, 17 Wn. App. 2d 64, 70, 484 P.3d 9 (2021), review denied, 198 Wn.2d 1039 (2022).[6]

---

[6] Relying on State v. Lopez, 70 Wn. App. 259, 856 P.2d 390 (1993), James asserts that the Aguilar-Spinelli test must be used in privacy act cases when probable cause is premised on information provided by an informant. While the Lopez opinion does indeed apply the Aguilar-Spinelli test to an order authorizing a recording pursuant to the privacy act, it does so without analysis of the method by which probable cause can be determined under the privacy act. Lopez, 70 Wn. App. at 263-64. Instead, it relies on State v. Jackson, which as previously explained, addresses the state constitutional requirements for a search warrant based on informants' tips. Lopez, 70 Wn. App. at 263-64. The court in Lopez did not hold that the privacy

Here, Detective Cooper's affidavit explained that Lucky had contacted a police officer with whom he was familiar from Lucky's own criminal activity, and asserted that his nephew, James, was the shooter in a multiple homicide event that Cooper was investigating. Lucky agreed to meet with Detective Cooper, and informed Detective Cooper that James, James's brothers, and their mother are homeless and live in a tent. Detective Cooper was already aware that James and his brothers lived in a tent several blocks away from the shootings. Lucky and Reno then met with detectives, described conversations Lucky had engaged in with James regarding the shootings, and identified photos of James and his brothers provided by Detective Cooper. When asked what weapons James possessed, Lucky and Reno told detectives that James had access to a revolver, a sawed-off shotgun, and a .45 caliber handgun. A .45 caliber bullet was removed from one of the victims who died. One of the surviving victims informed Detective Cooper that he saw the shooters and that they were "four young Samoan males." Detective Cooper was aware that James and his brothers were of Samoan heritage.

Based on assertions from Lucky and Reno that James had confessed to the crime, which aligned with information Detective Cooper obtained from other sources, it was reasonable for the detective to infer that James had committed a felony.[7] The circumstances under which Lucky and Reno supplied information

---

act requires application of the Aguilar-Spinelli test. Lopez, 70 Wn. App. at 263-64. Consistent with our later decisions, we conclude that it does not.

[7] Indeed, we previously addressed this issue as it pertains to the youngest Ta'afulisia brother and determined that "[t]he recording of utterances made by James was plainly supported by a finding of probable cause." See J.K.T., 11 Wn. App. 2d at 555.

also suggested that they were reliable. Lucky and Reno were close to James, aware of goings on in this close-knit community, and provided their full names and dates of birth to the detectives. Further, Lucky and Reno expressed that they were willing to attempt to personally record an incriminating conversation with James and his brothers, indicating that they believed such an attempt would likely be fruitful. Moreover, their willingness to record the conversation meant that the recording could be used to verify their recitals of what took place in the conversation. This eliminated the possibility that—in order to secure favors from the police—they would simply lie about what transpired in the conversation with James and his brothers. This willingness increased their reliability. Accordingly, there was probable cause to authorize the one-party consent recording.

B

James next contends that the application did not establish that other investigative techniques were unlikely to succeed such that the recording was necessary. According to James, the justifications for the recording used in the application were boilerplate. As Detective Cooper's affidavit explained with specificity why other methods of investigation were unlikely to succeed, we disagree.

Again, an application for an order authorizing a one-party consent recording must include "[a] particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ." RCW 9.73.130(3)(f). An application that "'contains

11

nothing more than general boilerplate'" fails to set forth particular facts showing that normal investigative methods were tried or appear unlikely to succeed. State v. Constance, 154 Wn. App. 861, 881, 226 P.3d 231 (2010) (quoting Manning, 81 Wn. App at 721). "Before resorting to an application under RCW 9.73.130, the police must either try or give serious consideration to other methods and explain to the issuing judge why those other methods are inadequate in the particular case." Manning, 81 Wn. App. at 720. This requirement reflects the legislature's desire to allow electronic surveillance under certain circumstances, but not as a routine procedure. Manning, 81 Wn. App. at 720. When determining whether to grant an intercept order, "the court must take into account the nature of the crime and the inherent difficulties in proving the crime." Constance, 154 Wn. App. at 883 (citing Kichinko, 26 Wn. App. at 311).

Herein, Detective Cooper's affidavit explained several reasons why normal investigative procedures were unlikely to succeed:

> Because the shooters wore masks and attacked under cover of darkness, the witnesses are unable to identify them. Currently there is no physical evidence linking any individuals to the shooting. Nor have investigators located any surveillance video or other significant link to the shooting. Some of the initial leads provided by witnesses have proven unreliable.

Detective Cooper's affidavit also explained that because of the nature of the crime and the close-knit nature of the community, James or others involved were unlikely to discuss the crime in the presence of a stranger, making it difficult to introduce an undercover officer. Further, as secondary considerations, the affidavit expressed that a recording would bolster the credibility of the informants and provide clarity as to the context of any conversation. See Manning, 81 Wn.

App. at 721 (desirability of avoiding a "'one-on-one swearing contest'" was an acceptable additional consideration (quoting State v. Platz, 33 Wn. App. 345, 350, 655 P.2d 710 (1982)).

These are more than boilerplate recitals. The affidavit establishes that the particular facts and circumstances of the crime—a masked shooting at night in a homeless encampment with no physical evidence or surveillance footage—made other investigative strategies unlikely to succeed.

James argues that law enforcement should have used other investigative methods, such as contacting the individual Bauer identified as the person that shot her (Juice) or showing victims a photomontage. However, given that there were five assailants, further investigation of Juice did not exclude the sensibility of investigating James. Similarly, even if one of the victims had identified someone else in a photomontage, that would not have indicated that investigating James was unwarranted. These other methods that James now proposes would not have constituted an acceptable alternative to following through with an investigation of James's possible participation in the shootings.

Because the application sufficiently established both probable cause that James had committed a felony and that normal investigative procedures were unlikely to be successful, the application was sufficient to support the order

authorizing the interception and recording of the conversation with James and his brothers.[8],[9]

Affirmed.

Dwyer, J.

WE CONCUR:

Andrus, C.J.

---

[8] On March 10, 2022, James filed a motion requesting that we enter an order allowing him to obtain a copy of the verbatim report of proceedings at public expense. RAP 10.10(e) provides that

> [i]f within 30 days after service of the brief prepared by defendant's counsel, defendant requests a copy of the verbatim report of proceedings from defendant's counsel, counsel should promptly serve a copy of the verbatim report of proceedings on the defendant and should file in the appellate court proof of such service. The pro se statement of additional grounds for review should then be filed within 30 days after service of the verbatim report of proceedings. The cost for producing and mailing the verbatim report of proceedings for an indigent defendant will be reimbursed to counsel from the Office of Public Defense in accordance with Title 15 of these rules.

James's counsel filed her opening brief on March 29, 2021. Oral argument took place on March 1, 2022, after which this case was submitted to the panel for consideration. As James's request was made not only well past 30 days after his counsel's opening brief was filed, but after the date on which the case was submitted to the panel for decision, we deny the motion as untimely.

[9] James moved for permission to adopt by reference his brother Jerome's argument on two issues: (1) whether the trial court erred by admitting evidence of a stun gun and a nonoperational firearm discovered in the tent in which the brothers lived, and (2) whether defense counsel was constitutionally ineffective. A commissioner of this court granted the motion. We find no error as to these issues for the same reason as we did so in State v. [Jerome] Ta'afulisia, No. 81723-0-I, slip op. at 25-30 (Wash. Ct. App. May 9, 2022) (unpublished portion) https://www.courts.wa.gov/opinions/pdf/817230.pdf.